ISHEE, J.,
for the Court:
¶ 1. Myrt Naylor Rhaly, Henry Crawford Rhaly Jr., John Thomas Rhaly, William DeWitt Rhaly, Bill Alan Wilson, Linda Gay Wilson, Mary Sue Creel, Hilda Louise Ferron, and Amy Jo Baxter (collectively, the Rhalys) were owners of property in Jackson, Mississippi, located near Eubank’s Creek, an improved drainage ditch. The Rhalys brought suit against the City of Jackson, alleging that its failure to maintain the ditch had caused their properties to flood on two separate occasions. Shortly before trial, the trial court struck the City’s answer for a discovery violation. The Rhalys were awarded a default judgment, and the City appeals.
FACTS
¶ 2. The Rhalys’ homes were flooded twice — first on July 30, 2002, and again on April 6, 2003. After the first flood, the Rhalys brought suit against the City, alleging that the ditch had not been properly maintained, and against BFI, Inc. and Waste Management of Mississippi, Inc., alleging that they each negligently placed a dumpster too close to the ditch. The Rhalys alleged that both dumpsters had been carried into the ditch by runoff, where they had combined with silt, vegetation, and debris to obstruct the ditch at the State Street bridge. The obstruction, the Rhalys alleged, had caused the ditch to overflow and flood their nearby properties. After the 2003 flood, the Rhalys brought another suit, alleging that the second flood had been caused the same way, except that it involved only a single dumpster owned by Waste Management. The trial court consolidated the two cases.
¶ 3. The City timely filed answers to the Rhalys’ suits, but the trial court struck the answers as a sanction for a discovery violation. In their discovery requests, the Rhalys had asked for the production of “[a]ny standard operating procedure[s] (SOPs) which govern the site of the subject incident.” The City’s response was that none existed. About a week before the scheduled trial date, the Rhalys discovered that the City had been operating under a manual, titled as “Streets, Bridges, and Drainage Division of the Public Works Departmeni/City of Jackson, Mississippi/Operations and Maintenance/Policy Manual.”[1] The Rhalys found the manual while reviewing the trial court record in another flood case, City of Jackson v. Internal Engine Parts Group, Inc.[2]
*660 ¶ 4. In the Internal Engine Parts case, the City originally intended to use the manual as part of its defense. The manual was first produced in that action as an exhibit to the testimony of a proffered witness for the City. However, the City did not disclose that witness (and six others) until approximately one week before trial, and the trial court did not allow the newly identified witnesses to testify. The trial court did, however, allow the plaintiffs to introduce the manual into evidence at the trial. A city employee, who had previously been designated as the City’s Rule 30(b)(6) representative,[3] testified that the manual had been in use by the City at the time of the August 9, 2001, flood at issue in that case. The manual’s use in the Internal Engine Parts case was a contested issue both in the trial and the subsequent appeal. In short, the record from that case demonstrated that the manual had been in use by the City prior to both floods in the Rhaly case and that the City — both its employees and its counsel — had been aware of the manual at the time it made the false discovery responses to the Rha-lys.
¶ 5. After uncovering the manual, the Rhalys sought sanctions against the City for the discovery violation. The trial court found that no evidence had been produced that the City intentionally concealed the manual from the Rhalys. The trial court concluded, however, that the City’s false responses reflected at least a “gross indifference” to its discovery obligations. The trial court sanctioned the City by striking its answer and entering a default judgment for $149,872.10. The Rhalys were also awarded $31,226.84 for attorneys’ fees and $3,862.54 for expenses.
¶ 6. Appeals were taken by the City from the default judgment entered against it and by the Rhalys from the summary judgment granted to Waste Management. This Court deconsolidated the case on appeal. In the Waste Mgmt. appeal, we reversed the summary judgment granted to Waste Management, finding genuine issues of material fact as to whether the dumpster had been negligently left unsecured near the ditch and whether it had been a substantial factor in causing the floods. Rhaly v. Waste Management of Miss., Inc., 43 So.3d 509 (Miss.Ct.App. 2010). The present case concerns only the default judgment granted against the City.
DISCUSSION
¶ 7. Whether to impose sanctions for discovery abuses is entrusted to the trial court’s discretion. Amiker v. Drugs for Less, Inc., 796 So.2d 942, 948 (¶ 24) (Miss.2000). “The power to dismiss is inherent in any court of law or equity, being a means necessary to the orderly expedition of justice and the court’s control of its own docket.” Id. The trial court has great latitude in determining what sanctions are appropriate. Pierce v. Heritage Props., Inc., 688 So.2d 1385, 1388 (Miss.1997). Nonetheless, “the trial court should dismiss a cause of action for failure to comply with discovery only under the most extreme circumstances.” Id.
¶ 8. “Rule 37 of the Mississippi Rules of Civil Procedure is designed to vest with the trial court great latitude in deciding when and what sanctions will be imposed for a discovery violation.” Marshall v. Burger King, 2 So.3d 702, 706 (¶ 8) (Miss.Ct.App.2008). Consequently, we review the trial court’s decision to grant discovery sanctions for an abuse of discretion. Pierce, 688 So.2d at 1388. If the trial court applied the correct legal standard, we will affirm unless we have a *661 “definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors.” Id.
¶ 9. The Mississippi Supreme Court has held that:
[Dismissal is to be used as a sanction only as a last resort. Lower courts should be cautious in either dismissing a suit or pleadings or refusing to permit testimony.... The reason for this is obvious. Courts are courts of justice not of form. The parties should not be penalized for any procedural failure that may be handled without doing violence to court procedures.
Robert v. Colson, 729 So.2d 1243, 1247-48 (¶ 28) (Miss.1999) (internal quotations omitted). The Court has outlined four factors to assist in evaluating whether dismissal is an appropriate sanction for a discovery violation. These factors “are considerations and not four absolute requirements.” Marshall, 2 So.3d at 706 (¶ 9). They are:
First, dismissal is authorized only when the failure to comply with the court’s order results from wilfulness or bad faith, and not from the inability to comply. Dismissal is proper only in [a] situation where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. Another consideration is whether the other party’s preparation for trial was substantially prejudiced. Finally, dismissal may be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client, or when a party’s simple negligence is grounded in confusion or sincere misunderstanding of the court’s orders.
Id. (quoting Pierce, 688 So.2d at 1389).
¶ 10. The City contends that the trial court abused its discretion in awarding the “death penalty” sanction. Its principal argument is that the discovery response at issue was not, in fact, false. It also claims that the manual was disclosed in discovery and promised to be produced, but, as a result of a simple oversight, was never actually produced.
¶ 11. The full text of the Rhaly’s request for production of documents and the City’s responses are as follows:
REQUEST NO. 2: Any standard operating procedure (SOPs) which govern the site of the subject incident.
RESPONSE NO. 2: None. Will supplement upon receipt of any information.
SUPPLEMENTAL TO RESPONSE NO. 2: There was no standard operating procedure which governed water quantity control in the City of Jackson at the time of the incident. Matters were handled by exterior or interior complaint with routine inspections made before and after rain events on problem areas. Beginning November 26, 2004, the City adapted from the Operations and Maintenance Manual prepared for water quality requirements of the EPA a Storm Water Drainage Maintenance Plan for water quantity purposes. A copy is produced.
¶ 12. The City admits that the manual was a “standard operating procedure” and that it should have been produced. It also admits that the manual was not actually produced. The contention, however, is that the manual was disclosed and a copy was promised, but inadvertently, it was not produced. The City accuses the Rhalys of ignoring a “clear reference” to the manual in discovery and “playing gotcha games” on the eve of trial.
¶ 13. We are satisfied that is not the case. Clearly, the City’s initial response falsely stated that there were no standard operating procedures. It was followed by a supplemental response that specifically *662 and unequivocally stated: “There was no standard operating procedure which governed water quantity control in the City of Jackson at the time of the incident.” This was also false. Acknowledging this, the City contends that the supplemental response must be considered in its entirety. It claims that the last two sentences contain a “clear reference” to the manual and a promise that it would be produced.
¶ 14. The City’s response did mention an “Operations and Maintenance Manual,” but if this is a reference to the manual at issue, it is not a clear one. The response describes the manual only as having been “prepared for water quality requirements of the EPA.” Not only did this fail to inform the Rhalys of its relevance (since water quality was not at issue in the Rha-lys’ suit), but if it is describing the manual at issue, that description appears to be inaccurate. The manual says almost nothing about “water quality,” and the record contains no reason to believe it was prepared for the EPA. According to the manual, its “purpose ... is to provide the Streets, Bridges[,] and Drainage Division of the Public Works Department of the City of Jackson with operation and maintenance policies for the management of the City’s storm water drainage system.” The maintenance it discusses pertains almost exclusively to controlling erosion and keeping the City’s drainage system free of obstructions. If anything, the manual appears to address water “quantity” rather than “quality” as claimed in the response. Additionally, contrary to the City’s contention, it is plain that the document the City stated would be produced in its response is not the manual, but the “Storm Water Drainage Maintenance Plan,” which was not relevant because it was adopted after the floods at issue. We cannot say that the trial court erred in finding the City’s discovery response to be false.
¶ 15. The City next attacks the legal standard applied by the trial court. The City asserts, correctly, that the trial court was required to find that its discovery failure was a product of wilfulness in order to support the severe sanction of dismissal. Our supreme court has held that “dismissal is authorized only when the failure to comply with the court’s order results from wilfulness or bad faith, and not from the inability to comply.” Wood ex rel. Wood v. Biloxi Pub. Sch. Dist, 757 So.2d 190, 193 (¶ 9) (Miss.2000). The trial court specifically found that there was no evidence the City had intentionally concealed the manual, and the City argues that this precludes a finding of wilfulness. We do not agree.
¶ 16. The supreme court has held that “[a] finding of willfulness may be based upon either a willful, intentional, and bad faith attempt to conceal evidence or a gross indifference to discovery obligations.” Amiker, 796 So.2d at 951 (¶ 34) (quoting Pierce, 688 So.2d at 1388). The trial court specifically found that the City’s false response, though not proven to be intentional, reflected at least a “gross indifference to discovery obligations.” Our supreme court stated in Amiker that gross indifference is the functional equivalent of wilfulness. Id. The New Mexico Supreme Court, reaching the same conclusion, elaborated on its holding:
[Wjhether [the] original failures to make ... discovery were the result of a willful, intentional and bad faith attempt to conceal evidence, as the trial court found, or were due to a gross indifference to its discovery obligations, is immaterial. The willfulness required to sustain the severe sanction [of dismissal] may be predicated upon either type of behavior. The two types of misconduct differ only in degree as to culpability, and they differ not at all in terms of the *663 adverse effects ... on the due process rights of [the other party] and the integrity of the truth-seeking function of the trial court.
United Nuclear Corp. v. Gen. Atomic Co., 96 N.M. 155, 629 P.2d 231, 314 (1980) (citations omitted). Wilfulness was required to support the dismissal sanction, but this does not require an intentional attempt to conceal the evidence. A finding of a gross indifference to discovery obligations is sufficient to satisfy the wilfulness requirement.
¶ 17. The Mississippi Supreme Court has also stated that “dismissal may be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client, or when a party’s simple negligence is grounded in confusion or sincere misunderstanding of the court’s orders.” Pierce, 688 So.2d at 1389. The trial court apparently did accept the city attorney’s representation that the discovery failure was attributable to its office, but there are two important things to note. First, this is only one factor to be considered by the trial court, in its discretion; the supreme court stated that dismissal may be inappropriate if the discovery failure is plainly attributable to the attorney. Second, the attribution of fault to the city attorney is not at all clear or plain in the record. It stems only from a bare representation by the City’s counsel in arguments that the false response was a product of staff turnover during the prior city attorney’s administration. The City has never offered a more detailed explanation, and it has never offered a basis for even this representation. Instead, it appears to be speculation by the City’s present counsel.[4] The City has not produced testimony or affidavits from counsel that was actually involved in composing the discovery response, nor has it offered testimony from City employees or representatives. In fact, despite an offer from the trial court, the City declined to offer any evidence whatsoever to explain its discovery failure. We cannot say from the record that the fault is “plainly” attributable to counsel.
¶ 18. The City next contends that the trial court erred in not determining the probative value of the manual. One of the factors we are to consider is whether the Rhalys’ preparation for trial was substantially prejudiced. Pierce, 688 So.2d at 1388.
¶ 19. According to the manual, it “specified] responsibilities and procedures for the inspection of and maintenance of storm water systems” within the City of Jackson. It defined routine maintenance as “removal of debris, accumulated sediment, trash, naturally occurring vegetation and other obstructions which might reduce the flow.” The manual also included a schedule for routine inspection of drainage ditches and procedures for handling and recording complaints. As we said, the Rhalys’ suits alleged that the City negligently failed to maintain Eubanks Creek, an improved drainage ditch. The record in the Internal Engine Parts case established that the manual had been adopted by the City prior to both floods in the present case.
¶ 20. The City is correct that the probative value of the manual is not readily apparent from the record. Nonetheless, the relevant concern is not the probative value of the manual. Discovery in this case proceeded for about three years, and the Rhalys contend that they were wrongfully denied the use of the manual in investigating the case, deposing witnesses, and so forth. The trial court found “substantial prejudice” to the Rhalys, but the court *664 did not make specific findings on this factor. However, the supreme court has stated that “there is no requirement that the defendant be substantially prejudiced by the absence of evidence.” Pierce, 688 So.2d at 1391. The supreme court continued: “When a party has frustrated the orderly judicial process by false or erroneous responses to interrogatories, that party should not be able to argue that its own conduct has removed it beyond the reach of sanctions.” Id. at 1390. “It would be ridiculous to allow a party who completely thwarts discovery to escape penalty simply because it could not be proven that other litigants were in fact deceived by such misconduct or actually relied upon it.” Id.
¶ 21. Finally, the City contends that the trial court did not have the authority to order a sanction under Rule 37 of the Mississippi Rules of Civil Procedure without first entertaining a motion to compel discovery. The City asserts that it was entitled to an opportunity to cure the discovery failure before sanctions could be awarded. We think this argument is plainly without merit. While some of the language in Rule 37 does suggest that sanctions may only be awarded following an order compelling discovery, Rule 37(e) has no such requirement. It states:
In addition to the application of those sanctions, specified in Rule 26(d) and other provisions of this rule, the court may impose upon any party or counsel such sanctions as may be just, including the payment of reasonable expenses and attorneys’ fees, if any party or counsel (i) fails without good cause to cooperate in the framing of an appropriate discovery plan by agreement under Rule 26(c), or (ii) otherwise abuses the discovery process in seeking, making or resisting discovery.
Moreover, as we have previously stated, the trial court also possesses the inherent authority to dismiss a case as part of its power to control its own docket. Amiker, 796 So.2d at 948 (¶ 24).
¶ 22. “Dismissal with prejudice is a sanction that should be imposed only in those rare instances where the conduct of a party is so egregious that no other sanction will meet the demands of justice.” Scoggins v. Ellzey Beverages, Inc., 743 So.2d 990, 997 (¶26) (Miss.1999). Nonetheless, “[t]he control of discovery is a matter committed to the sound discretion of the trial judge.” Holland v. Mayfield, 826 So.2d 664, 673 (¶ 37) (Miss.1999). After a detailed discussion of the relevant factors, the trial court concluded that lesser sanctions would not suffice. This has not been shown to be an abuse of discretion. We must therefore affirm the trial court’s judgment.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., BARNES, ROBERTS AND CARLTON, JJ., CONCUR. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRIFFIS, P.J., AND MAXWELL, J. MYERS, J., NOT PARTICIPATING.

. We shall refer to it simply as "the manual.”

. The case was heard on appeal as City of Jackson v. Internal Engine Parts Group, Inc., 903 So.2d 60 (Miss.2005).

. See M.R.C.P. 36(b).

. The city attorney represented during oral argument before this Court that no one presently employed in his office was there at the time the false discovery responses were made.