ON WRIT OF CERTIORARI

RANDOLPH, Justice,
for the Court:
¶ 1. Property owners (collectively, “the Rhalys”) brought suit against the City of Jackson for flooding to their properties, allegedly caused by the City’s failure to maintain a ditch. The Circuit Court of Hinds County struck the City’s answer due to “gross indifference to its discovery obligations,” based upon its failure to produce the “Streets, Bridges, and Drainage Division of the Public Works Department Operations and Maintenance Policy Manual” (“Manual”), and entered a default judgment in favor of the Rhalys. The Mississippi Court of Appeals affirmed. See City of Jackson v. Rhaly, 95 So.3d 657, 2011 WL 1486624 (Miss.Ct.App. April 19, 2011). As the circuit court’s finding that the City exhibited “gross indifference to its discovery obligations” is reviewed for abuse of discretion, and the City’s failure to produce the Manual reflects a prime example of “gross indifference,” this Court affirms the circuit court and the Court of Appeals. See Amiker v. Drugs for Less, Inc., 796 So.2d 942, 948 (Miss.2000) (citing White v. White, 509 So.2d 205, 207 (Miss.1987)).
FACTS
¶ 2. The Rhalys owned property in Jackson, Mississippi, near Eubank’s Creek — an *604 improved drainage ditch. The flooding incidents underlying the subject cases took place on July 30, 2002, and April 6, 2003. Complaints in the subsequently consolidated cases, predicated upon claims of negligence and gross and reckless negligence, were filed on December 27, 2002, and November 1, 2004, respectively. On January 23, 2002, a complaint had been filed against the City in the circuit court, before the same circuit judge, in the case styled City of Jackson v. Internal Engine Paris Group.[1] See Internal Engine Paris, 903 So.2d at 62. On November 24, 2003, the circuit court entered its verdict and judgment in Internal Engine Parts, “awarding $369,480.32 in favor of Engine Parts.”[2] Id. at 62. Approximately seven months later, on July 12, 2004, the City filed its “Responses to Plaintiffs’ First Request for Production of Documents and Things” and “Responses to Plaintiffs’ First Set of Interrogatories” in the present case, which included:
Request No. 2: Any standard operating procedure (SOPs) which govern the site of the subject incident.
Response No. 2: [NJone. Will supplement upon receipt of any information.
[[Image here]]
Interrogatory No. 20: Please describe any claims or lawsuits that have heretofore been brought against this Defendant by reason of an incident or injury at the same or similar location, or a similar type of incident at some other location for five years prior to the subject incident and at any time subsequent thereto.
Response No. 20: The City of Jackson is not aware of any lawsuits filed five years prior to the subject incident.
(Emphasis added.) On February 7, 2005, the City filed its “Supplementation of Responses to Plaintiffs’ First Request for Production of Documents and Things” and “Supplementation of Responses to Plaintiffs’ First Set of Interrogatories,” which included:
Request No. 2: Any standard operating procedure (SOPs) which govern the site of the subject incident.
Response No. 2: [NJone. Will supplement upon receipt of any information.
Supplementation to Response No. 2: There was no standard operating procedure which governed water quantity control in the City of Jackson at the time of the incident. Matters were handled by exterior or interior complaint with routine inspections made before and after rain events on problem areas. Beginning November 26, 2004, the City adapted from the Operations and Maintenance Manual prepared for water quality requirements of the EPA a Storm Water Drainage Maintenance Plan for water quantity purposes. A copy is produced.
[[Image here]]
Interrogatory No. 20: Please describe any claims or lawsuits that have heretofore been brought against this Defendant by reason of an incident or injury at the same or similar location, or a similar type of incident at some other location for five years prior to the subject incident and at any time subsequent thereto.
*605 Response No. 20: The City of Jackson is not aware of any lawsuits filed five years prior to the subject incident.
Supplementation to Response No. 20: The City of Jackson is not aware of any suits before or after this incident that involves the damming of the waterway by dumpsters swept into the channel by floodwaters. The Plaintiffs have served a Notice of Claim upon these Defendants relating to the flash flood of April 6, 2003.
(Emphasis added.)
¶ 3. Despite the aforementioned requests, and the facts developed at trial in Internal Engine Parts, the City never produced or referenced the Manual and never supplemented its interrogatory responses to refer to Internal Engine Parts.[3] The Rhalys only fortuitously discovered the Manual six days before trial, on March 31, 2008, when the paralegal for the Rhalys’ counsel found it as a pleading attachment while reviewing the record in Internal Engine Parts.
¶4. The stated purpose of the Manual was to:
provide the Streets, Bridges and Drainage Division of the Public Works Department of the City of Jackson with operation and maintenance policies for the management of the City’s storm water drainage system. This manual provides technical guidance for the structural control of storm water runoff.... The Manual will specify responsibilities and procedures for the inspection and maintenance of storm water systems that are within the City of Jackson’s jurisdiction. ... The Manual will designate which agency is responsible for the maintenance and inspection for the entire drainage system, and is intended to be used to assist in educating the Public Works staff members who are specifically responsible for prevention, treatment, and control of storm water runoff.
(Emphasis added.) The trial transcript from Internal Engine Parts, introduced as an exhibit by the Rhalys, reflects that the City’s Rule 30(b)(6) representative testified that the Manual “is what we abide by through our maintenance division[,]” and that it was in effect on August 9, 2001, nearly one year before the first incident in the present case (July 30, 2002). See Miss. R. Civ. P. 30(b)(6). Thus, the Rhalys procured this critical document, solely by their own effort, more than five years after the initial complaint was filed and only six days before trial.[4]
¶ 5. On April 2, 2008, the Rhalys filed a “Combined Motion for Sanctions Against the Defendant City of Jackson.” The Rha-lys claimed in their motion that the City’s “false representations were made by outright misrepresentations of fact in sworn interrogatories; and/or deliberate concealment of material evidence.” The Rhalys sought “an Order striking the Answer of each Defendant, and entering Default Judgment in favor of the [Rhalys] on all their claims.”
¶ 6. On May 15, 2008, after receiving “extensiv[e]” argument “on the issue of sanctions[,]” the circuit court entered its seven-page “Findings of Fact and Conclusions of Law.” The circuit court stated that “[i]t is undisputed that this same Manual was used in and directly involved in another case involving the City of Jackson *606 styled, [Internal Engine Parts], during much of the same time as the subject litigation.”[5] According to the circuit court, this “significant document” was requested by the Rhalys; “was within the knowledge of the City, its legal department, and its Drainage Division” by virtue of the “analogous flooding incident” in Internal Engine Parts; and “should have been produced.” Regarding the interrogatories, the circuit court found that the Rhalys “asked the proper questions and the City did not give the proper responses.” As the result of the City’s breach of its discovery duties, the circuit court determined that the Rhalys were impaired in “develop[ing] and pursuing] claims of negligence by the City and wrongful acts by the City in the maintenance of the particular drainage creek involved in this litigation.” Because of the “large amount of time and expense” incurred by the Rha-lys,[6] and the fact that the case was “on the eve of trial[,]” the circuit court found that the City’s “gross indifference to its discovery obligations” required a greater sanction than merely “giv[ing] the [Rhalys] an opportunity to reopen discovery and delay the trial.” (Emphasis added.) Based upon the “enormous and substantial prejudice” suffered by the Rhalys through “no fault” of their own, the circuit court concluded that the “proper sanction” for the City’s conduct was to strike its answer and enter judgment in favor of the Rhalys, pursuant to Mississippi Rule of Civil Procedure 37(e). See Miss. R. Civ. P. 37(e).
¶ 7. On January 6, 2009, the circuit court entered its “Order Denying Defendant City of Jackson’s Motion for Post Judgment Relief, or, in the Alternative, for Amended Findings of Fact and Conclusions of Law.” That order emphasized that the circuit court “has spent a considerable amount of time in considering the evidence presented at the hearing on [the Rhalys’] Motion for Sanctions[,]” and that, following such consideration, “the prior decision of this [c]ourt was and is warranted and within the sound discretion of this [cjourt .... ” (Emphasis added.)
¶ 8. On appeal, the Court of Appeals affirmed. See Rhaly, 95 So.3d at 664. Thereafter, this Court granted the City’s petition for writ of certiorari. See City of Jackson v. Rhaly, 73 So.3d 1168 (Miss. 2011).
ISSUE
¶ 9. This Court will consider:
Whether the sanction imposed by the circuit court constituted an abuse of discretion.
ANALYSIS

Rule 37(e) and Standard of Review

¶ 10. Mississippi Rule of Civil Procedure 37(e) provides that “the court may impose upon any party or counsel such sanctions as may be just, including the payment of reasonable expenses and attorneys’ fees, if any party or counsel ... (ii) ... abuses the discovery process in seeking, making or resisting discovery.” Miss. R. Civ. P. 37(e). This rule “generally authorizes the trial judge to issue sanctions appropriate to the transgression.”[7] *607 Amiker, 796 So.2d at 949 (citing Miss. R. Civ. P. 87(e)). Regarding such determinations:
[t]he decision to impose sanctions for discovery abuse is vested in the trial court’s discretion. The provisions for imposing sanctions are designed to give the court great latitude. The power to dismiss is inherent in any court of law or equity, being a means necessary to the orderly expedition of justice and the court’s control of its own docket. When this Court reviews a decision that is within the trial court’s discretion, it first asks if the court below applied the correct legal standard. If the trial court applied the right standard, then this Court considers whether the decision was one of several reasonable ones which could have been made. This Court will affirm a trial court’s decision unless there is a “definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors.”
Amiker, 796 So.2d at 948 (internal citations omitted) (emphasis added). See also Nat’l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 689, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976) (“The question, of course, is not whether this Court, or whether the Court of Appeals, would as an original matter have dismissed the action; it is whether the District Court abused its discretion in so doing.”); J.C. Hunter v. Int’l Sys. & Controls Corp., 56 F.R.D. 617, 631 (W.D.Mo.1972) (“The selection of the proper sanction is in the sound discretion of the trial court.”).

Application

¶ 11. The City’s supplemental response expressly misstated that “[t]here was no standard operating procedure which governed water quantity control in the City of Jackson at the time of the incident.” The City acknowledged that its responses were misleading and/or nonre-sponsive, insofar as the Manual should have been, yet was not, produced. Furthermore, the City made misleading or deceptive responses regarding “claims or lawsuits” as to “similar ... incidents]” in the “five years prior to the subject incident .... ” In short, several of the City’s responses did “not comport with the duty of cooperation and disclosure imposed by the discovery provisions of’ our Rules. Airtex Corp., 536 F.2d at 155. See also Miss. R. Civ. P. 33(b)(1) (“Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to....”); Miss. R. Civ. P. 34(b) (a response to a request for production of documents and things “shall state, with respect to each item or category that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for objection shall be stated.”). “Discovery is not to be *608 treated as a game of hide and seek. It should be a forthright effort to expedite litigation....” Bell, 80 F.R.D. at 231. The City’s responses were both “evasive and incomplete[,]” acting to “impede discovery rather than to facilitate it.” Airtex Corp., 536 F.2d at 155. “Parties like witnesses are required to state the truth, the whole truth and nothing but the truth in answering written interrogatories.” Pierce v. Heritage Props., Inc., 688 So.2d 1385, 1389 (Miss.1997) (quoting J.C. Hunter, 56 F.R.D. at 631). Furthermore, a “false answer” to an interrogatory or a false response to a request “is in some ways worse than no answer; it misleads and confuses the party.” Pierce, 688 So.2d at 1389 (quoting Smith v. Cessna Aircraft Co., 124 F.R.D. 103, 108 (D.Md.1989)). Here, the City’s denial of standard operating procedures governing “water quantity control ... at the time of the incident” directly contradicted the policies and procedures set forth in the Manual. Likewise, the City provided misleading or deceptive responses regarding “claims or lawsuits” as to “similar ... incident[s]” in the “five years prior to the subject incident....” Under such circumstances, this Court cannot conclude that the circuit court abused its discretion in finding a discovery violation based upon the City’s deceptive responses and failure to produce documents.
¶ 12. Having found a discovery violation, the circuit court then undertook an analysis regarding the appropriate sanction. The “Findings of Fact and Conclusions of Law” of the circuit court undeniably set forth the proper legal standard. See AmiJcer, 796 So.2d at 948 (“When this Court reviews a decision that is within the trial court’s discretion, it first asks if the court below applied the correct legal standard.”). According to the circuit court, that legal standard, established in Pierce, 688 So.2d at 1389, and reaffirmed in Scog-gins v. Ellzey Beverages, Inc., 743 So.2d 990 (Miss.1999), provides the “considerations a trial court should examine in evaluating the appropriateness of’ the sanction of dismissal. The circuit court stated the following factors:
(1) Whether the discovery violations were the result of willfulness or bad faith;
(2) Whether the deterrent value of Rule 37 may be achieved by lesser sanctions;
(3) Whether the wronged party has suffered prejudice as a result of the discovery violation; and
(4) Whether the discovery abuse is attributable solely to trial counsel instead of a blameless client.
Moreover, a review of the factors to be considered by the circuit court in striking the City’s answer and entering judgment in favor of the Rhalys, as discussed in ¶¶ 13-17 infra, provides no “definite and firm conviction that the court below committed a clear error of judgment....” Am-iker, 796 So.2d at 948 (emphasis added).
¶ 13. “A finding of willfulness may be based upon either a willful, intentional, and bad faith attempt to conceal evidence or a gross indifference to discovery obligations.” [8] Pierce, 688 So.2d at 1390 (citing Medina v. Found. Reserve Ins. Co., 117 N.M. 163, 870 P.2d 125, 126 (1994)) (emphasis added). In this case, there was “substantial evidence in the record” to support the circuit court’s conclusion that the City exhibited “gross indifference to its discovery obligations.” Scoggins, 743 So.2d at 996. The Rhalys’ complaints *609 were based upon claims of negligence and gross and reckless negligence. The existence, vel non, of “water quantity control” policies and procedures, as well as similar incidents in the past five years, was clearly relevant to the issues raised in the complaints. The circuit court considered the evidence presented and found that, despite knowledge of the policies and procedures by “the City ... and its Drainage Division[,]”[9] separate and apart from its legal department,[10] the City did not disclose the Manual’s existence to the Rhalys. Moreover, the City expressly denied the existence of any such document. Those responses were “in some ways worse than no answer[,]” because they mislead and confuse. Pierce, 688 So.2d at 1389 (quoting Smith, 124 F.R.D. at 108). Furthermore, despite Internal Engine Parts, the City denied the existence of “similar ... incident[s]” in the previous five years.
¶ 14. More than five years after the initial complaint was filed, and only six days before trial, the Rhalys fortuitously discovered the Manual on their own. The circuit court found that the City’s failure to disclose this “significant document” was at least “gross indifference to its discovery obligations.” Regarding interrogatories, the circuit court determined that the Rha-lys “asked the proper questions and the City did not give the proper responses.” Given the significance of the truth in relation to the Rhalys’ claims,[11] and disclosure of the Manual in Internal Engine Parts, this Court cannot conclude that the learned circuit judge’s findings regarding this factor constituted an abuse of discretion.
¶ 15. As to the potential deterrent value of lesser sanctions, the United States Supreme Court has stated that:
here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the [trial] court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.
Nat’l Hockey League, 427 U.S. at 643, 96 S.Ct. 2778. The circuit court found that the nature of the offenses, the considerable time and expense already incurred by the Rhalys over the previous five years of litigation, the impositions on the court, and the discovery of the Manual “on the eve of *610 trial[,]” collectively justified the sanction of striking the City’s answer. Under the facts presented, this Court cannot conclude that the circuit court’s findings regarding this factor constituted an abuse of discretion.
¶ 16. The circuit court also found “enormous and substantial prejudice” to the Rhalys. This finding was predicated upon the litany of pretrial activity conducted by the Rhalys, see supra note 5, without benefit of truthful responses to develop their claims. Because the Rhalys unearthed the discovery violations only six days before trial, the circuit judge found that reopening discovery would require them to incur “more expenses, time, effort, delaying the trial[,]” through no fault of their own. Under the facts presented, this Court cannot conclude that the circuit court’s findings regarding this factor constituted an abuse of discretion.
¶ 17. Finally, regarding fault, the circuit court found that the Manual “was within the knowledge of the City, its legal department, and its Drainage Division” based upon the “analogous flooding incident” in Internal Engine Parts, and “should have been produced.” As to the interrogatories, the circuit court determined that the Rhalys “asked the proper questions and the City did not give the proper responses.” Under the facts presented, this Court cannot conclude that the circuit court’s findings regarding this factor constituted an abuse of discretion.
CONCLUSION
¶ 18. “The question ... is not whether this Court ... would as an original matter have” imposed the same sanction. Nat’l Hockey League, 427 U.S. at 642, 96 S.Ct. 2778. It is only whether the sanction imposed constituted an abuse of discretion. See Amiker, 796 So.2d at 948. While “the trial court should dismiss a cause of action for failure to comply with discovery only under the most extreme cireumstances[,]” based upon the “gross indifference to discovery obligations” exhibited by the City in this case, this Court observes no error in the findings of the circuit court or in its application of the proper legal standard. Pierce, 688 So.2d at 1388. Thus, there is no abuse of discretion. Accordingly, we affirm both the Circuit Court of Hinds County and the Mississippi Court of Appeals.
¶ 19. AFFIRMED.
CARLSON, P.J., LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ„ CONCUR. WALLER, C.J, DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J. KING, J, NOT PARTICIPATING.

. That suit similarly "alleged acts of negligence and breach of contract ... for property damage sustained during a period of heavy rainfall and flooding!,]” on August 12, 2001. City of Jackson v. Internal Engine Parts Group, Inc., 903 So.2d 60, 62 (Miss.2005).

. On March 31, 2005, this Court affirmed the verdict and judgment. See Internal Engine Parts, 903 So.2d at 67.

. The City represented to this Court that neither attorney who represented the City on appeal was employed by the City at the time the discovery violations occurred.

. In Internal Engine Parts, the City produced the Manual only one week prior to trial, which began on November 6, 2003.

. At the hearing, the circuit judge referred to Internal Engine Parts as "the previous case to this case ... argued on appeal during the pendency of this case by the City.”

. The circuit court docket reflects substantial pretrial activity including, inter alia, discovery motions, motions for summary judgment, multiple trial settings, and the issuance of subpoenas.

.The focus of this Court’s analysis is Rule 37(e), because the circuit court’s ruling was based thereon. However, Rule 37(d) also is applicable. See Miss. R. Civ. P. 37(d). Under Rule 37(d), if a party fails "(2) to serve an *607 swers or objections to interrogatories submitted under Rule 33, after proper service of interrogatories, or (3) to serve a written response to a request for inspection.submitted under Rule 34, after proper service of the request,” the court is authorized to "make such orders in regard to the failure as are just, and among others it may take any action authorized under subsections (A), (B) and (C) of subsection (b)(2).... ” Id. (emphasis added). While the City did answer the interrogatories and respond to the requests, federal courts have held that the equivalent provision in Federal Rule of Civil Procedure 37(d) may still apply in such circumstances because "evasive or incomplete answers are tantamount to no answer at all....” Airtex Corp. v. Shelley Radiant Ceiling Co., 536 F.2d 145, 155 (7th Cir.1976). See also Bell v. Auto. Club of Michigan, 80 F.R.D. 228, 232 (E.D.Mich. 1978) (applying Rule 37(d) where "[t]he answers provided in defendants’ responses to plaintiffs’ first interrogatories ... were so misleading and deceptive as to constitute a failure to answer these interrogatories”). The City’s responses were clearly misleading.

. These "two types of misconduct differ only in degree as to culpability, and they differ not at all in terms of the adverse effects ... on the due process rights of [the other party] and the integrity of the truth-seeking function of the trial court.” United Nuclear Corp. v. Gen. Atomic Co., 96 N.M. 155, 629 P.2d 231, 314 (1980) (citations omitted).

. These are policies and procedures which the City’s Rule 30(b)(6) representative in Internal Engine Parts testified were "abidefd] by” in the maintenance division since at least August 2001.

. This finding of the circuit court is supported by the City's "Supplementation of Responses” to requests for production of documents and interrogatories. While the "Supplementation of Responses” was signed by the Senior Deputy City Attorney, it provided that the following individuals "assisted] in answering”: Thelman Boyd, Deputy Director for the City’s Department of Public Works; Mary F. Robinson, Acting City Clerk; and Carl Frelix, Infrastructure Management Division. The "Supplementation of Responses” further referenced information requested from the Department of Public Works, the Department of Risk Management and Public Works, the City Clerk’s Office, and the Mayor’s Office, as well as the "review of the discovery and all internal records....” This collectively refutes the suggestion in Presiding Justice Dickinson’s dissenting opinion that the responsibility for nonproduction rests solely with counsel for the "innocent” City. (Dickinson Diss. Op. at ¶ 23).

.See Miss. R. Civ. P. 1 ("These rules shall be construed to secure the just, speedy, and inexpensive determination of every action.”). That rule is consistent with Mississippi Rule of Evidence 102, which provides that the rules are directed toward "the end that the truth may be ascertained and proceedings justly determined.” M.R.E. 102.