# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CA-01297-SCT

*DAVID MICHAEL ASHMORE AND DEBRA L. ASHMORE*

*v.*

*MISSISSIPPI AUTHORITY ON EDUCATIONAL TELEVISION d/b/a MISSISSIPPI PUBLIC BROADCASTING (SUED AS SEPARATE ENTITIES) AND THE STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/09/2012 |
| TRIAL JUDGE: | HON. WILLIAM A. GOWAN, JR. |
| TRIAL COURT ATTORNEYS: | SETH C. LITTLE |
| | JEFFERY P. REYNOLDS |
| | CARSON THURMAN |
| | RYANNE SAUCIER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | THOMAS A. WALLER |
| | BARRY W. GILMER |
| ATTORNEYS FOR APPELLEES: | CARSON H. THURMAN |
| | JEFFERY P. REYNOLDS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 08/14/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. In this personal-injury case, the trial court dismissed the Ashmores' claims with prejudice for willful discovery violations. Finding no abuse of discretion, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2.     David Ashmore and his wife Debra Ashmore sued for injuries they alleged resulted from a motor-vehicle accident with a vehicle driven by an employee of the Mississippi Authority on Educational Television.  David sought damages for personal injuries that he allegedly suffered to his right and left knees, back, neck, and upper arms.  Debra sought damages for loss of David's services, companionship, and consortium; rendering of nursing care and services to David; emotional distress; and loss of enjoyment of life.

¶3.     After the Ashmores filed their complaint, the parties engaged in discovery.[1]  Two years after the Ashmores filed suit, the Mississippi Defendants filed a Motion to Dismiss as a Sanction for the Plaintiffs' Repeated False Sworn Testimony.  In the motion, the Mississippi Defendants argued before the trial court that the Ashmores provided a "pattern of false testimony" that "str[uck] to the core of the material issues in this lawsuit" regarding: (1) David's medical history – including knee surgeries, a back injury, and a left-leg injury; (2) the bases of David's disability; and (3) whether Debra sought similar "nursing care and services" damages in a separate nursing-home-negligence suit involving her father.  In response, the Ashmores argued that any inconsistencies between David's medical history and the interrogatory responses were resolved by the Ashmores' deposition testimony.

¶4.     A hearing for the motion was held on June 8, 2012.  Attorneys for both sides presented argument at the hearing, without affidavits or testimony from the Ashmores.  The

[1]During discovery, the trial court granted the Mississippi State Board of Education's motion for summary judgment, dismissing it from the case, leaving as the defendants the Mississippi Authority on Educational Television and the State of Mississippi ("Mississippi Defendants").

2

Mississippi Defendants submitted that David's interrogatory responses omitted material details of David's medical history. Specifically, the Mississippi Defendants pointed out that David had failed to disclose a previous back injury, previous surgeries to his right and left knees, and an injury to David's left leg that occurred after the motor-vehicle accident. The Mississippi Defendants submitted the following interrogatories and responses to the trial court:

> **INTERROGATORY NO. 16:** Please state whether you sustained a personal injury, had any accidents, or suffered from any serious illness, diseases, or mental health disorders *prior or subsequent* to the incident in question.

(Emphasis added.) David responded to the interrogatory three times.[2] The first two responses listed no previous or subsequent injuries to the areas of the body to which David claimed injuries in the present case; and the second supplemental response stated that David

---

[2]The answers to the interrogatories are as follows:

**ANSWER TO INTERROGATORY NO. 16:** Plaintiff would state that he has not previously received any injuries prior to the subject motor vehicle accident which affected the same part or parts of his body as the injuries which were incurred as a result of the subject motor vehicle accident. This answer may be supplemented.
**SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 16:** Plaintiff has not previously received any injuries prior to the subject motor vehicle accident which affected the same part or parts of his body as the injuries which were incurred as a result of the subject motor vehicle accident.
**SECOND SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 16:** Plaintiff would state that in the five (5) years prior to the subject motor vehicle accident, Plaintiff had been diagnosed with: [c]oronary heart disease, . . . [and] [k]idney stones. Since the date of the subject motor vehicle accident, Plaintiff has not suffered from any major illness, disease, or mental health condition.

had heart surgery and kidney stone surgery prior to the accident, but made no mention of any previous back or leg injuries or subsequent leg injuries. During David's deposition, the Mississippi Defendants questioned David about each of these items. David admitted to previous back injuries, having surgery on his right knee, and injuring his left leg approximately one month after the accident. But David consistently denied having surgery on his left knee prior to the accident.

¶5.     The Mississippi Defendants also submitted that the Ashmores provided false deposition testimony regarding the basis of David's disability. David and Debra both stated in their depositions that David's disability was solely based on injuries resulting from the motor-vehicle accident. But during the discovery phase, David filed for Social Security disability. The Social Security application asked what illnesses, injuries, and/or conditions limited David's ability to work. David replied that a number of conditions, including heart problems, diabetes, hypertension, and gout, limited his ability to work, *inter alia*. The Social Security Administration found that David was disabled; his explanation of determination stated "[y]ou state you are disabled and unable to work because of multiple [sic] vehicle injuries, heart, diabetes, hypertension, gout."

¶6.     Finally, the Mississippi Defendants argued that Debra failed to disclose that she was seeking similar damages in an unrelated nursing-home-negligence case involving her father. The Mississippi Defendants submitted that Debra's September 26, 2011, interrogatory response in the nursing-home-negligence case failed to disclose that Debra was seeking

damages for mental and emotional distress in the present case.[3]  In addition to seeking

damages for nursing services rendered to David and her father, Debra sought damages for

mental and emotional distress in both cases.  Yet, in her deposition in the case *sub judice*, the

Mississippi Defendants asked Debra if she was seeking damages for her nursing services in

the nursing-home-negligence case.  Debra stated that she was not.

¶7.    In addition to presenting the evidence discussed *supra*, the Mississippi Defendants

submitted a medical report revealing that David had left-knee surgery prior to the accident.

At the hearing, Ashmore's attorney, *inter alia*, admitted that David had surgery on both

knees,[4] prompting the court to inquire "how not disclosing . . . two knee surgeries, regardless

of what caused them, is not hiding the ball."

---

[3]Debra's interrogatory and answer:

**INTERROGATORY NO. 22:**  Have you, Ms. Ashmore, suffered or been treated for "mental pain, anguish (or) emotional distress," or a "loss of enjoyment of life" prior to October 3, 2007 or due to any matter unrelated to Mr. Henderson's stay at MSVH?  If so, give the details of such, the dates of any visits to medical or psychological professionals, and the name(s) of who you saw.
**ANSWER TO INTERROGATORY NO. 22:** Ms. Ashmore has suffered mental pain and anguish, emotional distress and loss of enjoyment of life due to the injuries suffered by Leonard Henderson as a result of the negligence of the Defendants.  Ms. Ashmore has not been treated by a doctor for mental pain and anguish, emotional distress, or loss of enjoyment of life.

[4]David's attorney stated that the left-knee surgery was the result of "a volleyball injury."

5

¶8. On July 10, 2012, the trial court, citing *Pierce v. Heritage Properties, Inc.*[5] and *Scoggins v. Ellzey Beverages*,[6] entered an order granting the Mississippi Defendants' motion, finding that the Ashmores' deposition testimony contained "wilful misrepresentations," and further finding that such misrepresentations represented a "deliberate attempt to subvert the judicial process." The Ashmores now appeal, claiming that the trial court abused its discretion in granting the Mississippi Defendants' Motion to Dismiss.

## STANDARD OF REVIEW

¶9. Trial courts are afforded broad discretion in discovery matters, and this Court will not overturn a trial court's decision unless there is an abuse of discretion:

> The decision to impose sanctions for discovery abuse is vested in the trial court's discretion. The provisions for imposing sanctions are designed to give the court great latitude. The power to dismiss is inherent in any court of law or equity, being a means necessary for orderly expedition of justice and the court's control of its own docket. Nevertheless, the trial court should dismiss a cause of action for failure to comply with discovery only under the most extreme circumstances.
>
> Such dismissals by the trial court are reviewed under an abuse of discretion standard. When this Court reviews a decision that is within the trial court's discretion, it first asks if the court below applied the correct legal standard. If the trial court applied the right standard, then this Court considers whether the decision was one of several reasonable ones which could have been made.

*Pierce*, 688 So. 2d at 1388 (citations omitted).

## ANALYSIS

---

[5] *Pierce v. Heritage Properties, Inc.*, 688 So. 2d 1385 (Miss. 1997).

[6] *Scoggins v. Ellzey Beverages, Inc.*, 743 So. 2d 990, 997 (Miss. 1999).

6

¶10.     This Court empowered trial courts with the discretionary authority to sanction, including the authority to dismiss an action, *inter alia*.  M.R.C.P. 37.  In *Pierce*, we applied the following considerations for determining whether a trial court abused its discretion under Rule 37 by dismissing with prejudice:

> First, dismissal is authorized only when the failure to comply with the court's order results from wilfulness or bad faith, and not from the inability to comply. Dismissal is proper only in situation [sic] where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. Another consideration is whether the other party's preparation for trial was substantially prejudiced. Finally, dismissal may be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client, or when a party's simple negligence is grounded in confusion or sincere misunderstanding of the court's orders.

*Id.* at 1389 (quoting *Batson v. Neal Spelce Assocs. Inc.*, 765 F. 2d 511, 514 (5th Cir. 1985)).This Court has affirmed the trial court's discretionary authority to dismiss given similar egregious conduct by a party, as in this case. *Beck v. Sapet*, 937 So. 2d 945, 946 (Miss. 2006); *Allen v. Nat'l R.R. Passenger Corp.*, 934 So. 2d 1006, 1008 (Miss. 2006); *Scoggins v. Ellzey Beverages, Inc.*, 743 So. 2d 990, 997 (Miss. 1999); *Pierce*, 688 So. 2d 1385.  The Court of Appeals followed our rulings in *Conklin v. Boyd Gaming Corp.*, 75 So. 3d 589, 595 (Miss. Ct. App. 2011), by affirming dismissal as a sanction due to the trial court's finding that the plaintiff engaged in a repeated course of conduct of providing false answers and failing to disclose relevant information.

¶11.     In short, if the trial court applies the "correct legal standard," we must affirm the decision, regardless of what any one of us individually might have ruled had we been the judge, unless there is a "definite and firm conviction that the court below committed clear

7

error." *See* ***City of Jackson v. Rhaly***, 95 So. 3d 602, 607 (Miss. 2012) (citations omitted). Although reasonable minds might differ as to the disposition, there is no support in the record that the trial court failed to apply the correct legal standard in the case *sub judice*, for indeed, the trial judge cited our decisions in ***Pierce*** and ***Scoggins*** as authority, dispelling any notion of applying an incorrect standard. The trial judge relied upon the standard as announced by this Court. Abuse of discretion is the most deferential standard of review appellate courts employ. *See* ***Fitch v. Valentine***, 959 So. 2d 1012, 1022 (Miss. 2007) ("this Court applies the deferential abuse of discretion standard of review"); *see also* ***White v. Thompson***, 822 So. 2d 1125, 1128 (Miss. Ct. App. 2002) (abuse of discretion "is highly deferential").

¶12.     The dissent engages in a de novo review of the matter considered and offers new conclusions not made by the trial judge. The dissent then grants zero deference to the trial court. Rather than acting with measured restraint in conducting appellate review, the dissent puts on the robe of a trial judge, scrutinizes the record, and declares that the trial court failed to conduct a comprehensive hearing. The dissent reweighs the competing claims, offering relief for the claimants, who exhibited a catch-me-if-you-can mentality for more than two years, and finally presents its own findings for the trial court's edification. There is no reference to "error" by the trial court, much less "clear error" or an "arbitrary" decision.

¶13.     Abuse of discretion is the most deferential standard of review appellate courts employ. A finding of abuse of discretion absent a definite and firm identification of clear error violates time-honored standard-of-review principles. By superceding the discretion trial courts traditionally have been afforded, the dissent would erode the principle and resculpt the

8

result to another permissible option, an option the dissenting author would have selected had he been the trial judge. Such action eviscerates the principles of appellate review and renders "abuse of discretion" a standard of review in name only.

¶14. Rule 1 of the Mississippi Rules of Civil Procedure proposes that the purpose of the rules is to secure a "just" determination. The comments to Rule 1 state that "[t]he primary purpose of procedural rules should be to *promote the ends of justice*." M.R.C.P. cmt. (emphasis added). Is not the "purpose of justice . . . the ascertainment of the truth[?]" *Hayden v. State*, 972 So. 2d 525, 538 (Miss. 2007) (Randolph, J., specially concurring). "Parties, like witnesses, are required to state the truth, the whole truth and nothing but the truth in answering written interrogatories." *Pierce*, 688 So. 2d at 1389 (citation omitted). Truth and justice complement each other. Can true justice ever be accorded on false testimony? We think not. Should violators be rewarded, or only have their hands slapped, for making "willful misrepresentations," which, if not exposed, result in ill-gotten gain? Rule 37(e) not only empowers, but specifically grants trial courts the authority to dismiss a case with prejudice "as may be just."

¶15. The rule-designated tribunal, a trial court, found the Ashmores' pattern of lying and concealment to be "willful misrepresentations" and a "deliberate attempt to subvert the judicial process." Any attempt to "subvert the judicial process" cuts against the very core of "promot[ing] the ends of justice" and the "ascertainment of the truth," a goal which guides discovery, the rules of evidence and procedure, and trials. If trial judges lack the

9

authority to throw dishonest parties out of court when their lies are exposed, then we will never achieve true justice.

¶16. "An appellate court should not feign allegiance to the rule that a matter is within the trial court's sound discretion and then find an abuse of discretion whenever it disagrees with the trial judge's decision." *Frazier v. State*, 305 Ga. App. 274, 280, 699 S.E.2d 747, 752 (Ga. App. 2010) (Mikell, J., concurring). "Sound discretion imports a decision by reference to legally valid standards." *Bell v. City of Bay St. Louis*, 467 So. 2d 657, 661 (Miss. 1985). Only "[w]here a trial judge in determining a matter committed to his sound discretion makes his decision by reference to an erroneous view of the law, [does] this Court [have] authority to take appropriate corrective action on appeal." *Id.*

¶17. That did not occur in this case. "[T]he decision of a trial judge will stand 'unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion.'" *Mississippi Transp. Comm'n v. McLemore*, 863 So. 2d 31, 34 (Miss. 2003) (citing *Puckett v. State*, 737 So. 2d 322, 342 (Miss. 1999)). Nothing in the record hints of an "arbitrary" or "clearly erroneous" decision. "The question, of course, is not whether this Court . . . would as an original matter have dismissed the action; it is whether the [trial] [c]ourt abused its discretion in so doing." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642, 96 S. Ct. 2778, 2780, 49 L. Ed. 2d 747 (1976). Our review has been described as follows:

> Our inquiry, then is not whether the circuit judge ruled contrary to what one of us might have ruled, *not whether he was "right" or "wrong" in our view, but whether he abused his discretion*. And, unless the trial court based his

> decision on an erroneous view of the law, we are not authorized to reverse for
> an abuse of discretion unless we find it was arbitrary and clearly erroneous.

*Westbrook v. State*, 658 So. 2d 847, 851 (Miss. 1995) (quoting *Hooten v. State*, 492 So. 2d

948, 950 (Miss. 1986)) (emphasis added).

¶18. The dissent posits that "the facts of today's case fall somewhere between the

egregious acts contemplated by *Pierce* and *Scoggins* and the single, vague discovery

response in *Wood* [*ex rel Wood v. Biloxi Public Sch. Dist.*, 757 So. 2d 190 (Miss. 2000)]."

(Dis. Op. ¶40). When did lying under oath lose its egregious nature, defined as

"outstandingly bad: blatant."[7] Such rationalization is not a standard of review, nor should

it be a guide to our determination of a dismissal under Rule 37 of the Mississippi Rules of

Civil Procedure.

¶19. Under Rule 37, options available to every trial court for failure to cooperate[8] in

discovery span from payment of reasonable expenses and attorneys' fees, to ordering

designated facts to be taken as established, to "refusing to allow the disobedient party to

support or oppose designated claims or defenses," to striking out pleadings, to holding a

party in contempt of court, to dismissing the suit. All are permissible, and all are within the

trial court's discretion. The dissent opines that "the trial court's order did not thoroughly

address each of the four [*Pierce*] considerations." (Dis. Op. ¶54 ). However, *Pierce* does not

___

[7]*Websters II New College Dictionary* 360 (2001).

[8]Under Rule 37, "evasive or incomplete answer[s] [are] to be treated as a failure to answer." M.R.C.P. 37(a)(3).

11

require trial courts to address each consideration. *Pierce*, 688 So. 2d at 1391 (holding that dismissal was appropriate without a consideration of prejudice); *Scoggins*, 743 So. 2d at 997 ("[I]n *Pierce* we stated there is no requirement that the defendant be substantially prejudiced. . . .").

¶20.    Turning to the facts of the case *sub judice*, we must "first ask[] if the court below applied the correct legal standard." *Rhaly*, 95 So. 3d at 607. He did. The first consideration is whether the discovery violations were the result of willfulness or bad faith. The trial court explicitly found Ashmore's interrogatory and deposition responses to be "willful misrepresentations" and a "deliberate attempt to subvert the judicial process."

¶21.    The second consideration is whether the deterrent value of Rule 37 may be achieved by lesser sanctions. In the case *sub judice*, the trial court considered lesser sanctions, an option available to every trial court. In his order, the trial judge stated "[t]he Court is cognizance [sic] of the fact the Supreme Court has mandated it impose the least restrictive sanction that will accomplish the purpose for which it is opposed." The trial court "considered" "vigorous cross-examination," and the alternative sanctions of "imposing fees," or "reducing the verdict." The trial court then cited our holding in *Scoggins*[9] and dismissed the viability of any lesser sanctions, finding that they "create[] several problems such as what

_____

[9]In *Scoggins*, the trial court found that the alternative sanction of payment of attorney fees would cause "several problems." *Scoggins*, 743 So. 2d at 995. First, the plaintiff would not be in a position to pay the fees without a substantial judgment at trial. *Id.* Second, any award at trial would result in substantial injustice being done due to Scoggins's willful misrepresentations during discovery. *Id.*

12

to do if the defense obtains a verdict in its favor." The trial court's consideration and rejection of lesser sanctions follows this Court's instruction in *Scoggins*.[10] *See also Pierce*, 688 So. 2d at 1391 ("other sanctions considered by the court would not achieve the deterrent value of the dismissal"). The trial court's decision was not arbitrary ("not done according to reason or judgment, but depending on the will alone"[11]), but rather was based on the law we established.

¶22. The third consideration is whether the wronged party has suffered prejudice as a result of the discovery violation. However, "there is no requirement that the defendant be substantially prejudiced by the absence of evidence." *Pierce*, 688 So. 2d at 1391; *see also Allen*, 934 So. 2d at 1013 ("substantial prejudice is not necessary under this test"). In *Pierce*, the Court found dismissal "wholly appropriate" where "there is substantial evidence in the record to support her admitted deception." *Pierce*, 688 So. 2d at 1391. Although prejudice need not be shown, this Court has recognized that substantial prejudice occurs when discovery violations impose on the opposing party "major inconvenience in time, attorney fees and general frustration." *Scoggins*, 743 So. 2d at 997. The Ashmores' pattern of "willful misrepresentations" spanned more than two years, causing the Mississippi Defendants "major inconvenience in time, attorney fees and general frustration." *See id.*

---

[10]In *Scoggins*, this Court rejected at least three other lesser sanctions in addition to those listed in Rule 37, on the grounds that "a mere fine, payment of attorney fees or limitation of recovery" would not remedy the willful violations and would cause "several problems." *Scoggins*, 743 So. 2d at 994.

[11]*Hall v. City of Ridgeland*, 37 So. 3d 25, 36 (Miss. 2010).

¶23. The fourth factor is whether the abuse is attributable solely to trial counsel instead of a blameless client. The trial court made no finding that the Ashmores' counsel had knowledge of the false and deceptive responses, i.e., the "willful misrepresentations," nor does the record suggest same. In its order, the trial court specifically found that both Ashmores had made misrepresentations throughout discovery; thus, we are not dealing with "blameless clients."

¶24. The trial court found that David had lied by concealing a right-knee surgery and degenerative joint disease in his right knee. The trial court further found that David "affirmatively stated" that he did not have a subsequent left-knee injury or degenerative disc disease in his back, despite medical reports to the contrary. The trial judge also noted the inconsistency of David's claim of permanent and total disability and inability to be intimate with his wife solely related to the accident in discovery responses when compared to his Social Security disability application, relating his disability to heart problems and shortness of breath, *inter alia*.

¶25. The trial court found that Debra had misrepresented the fact that she was seeking compensation for nursing services. The trial judge found in his order that the most "compelling reason" for granting dismissal was the Ashmores' "deliberate attempt to subvert the judicial process." Courts, trial or appellate, should not condone lies or mollify penalties for lying or discourage trial judges from protecting our courts from those who would seek to abuse the judicial process in pursuit of lucre. Every court, at every level, should be vigilant in maintaining integrity.

14

¶26. The trial court cited and then applied the correct legal standard. Our role is to "consider[] whether the decision was one of several reasonable ones which could have been made." *Rhaly*, 95 So. 3d at 607. As discussed *supra*, our precedent supports the trial court's dismissal as one of several viable options which the court could make. The trial court relied upon this Court's decisions in *Pierce* and *Scoggins*. The trial court cited *Pierce* for the proposition that that lesser sanctions would not have achieved the proper deterrent effect and could have resulted in no penalties if the Mississippi Defendants had received a favorable verdict. The trial court's decision was one of the alternatives our law allows. The dissent's disagreement with the trial court is not the equivalent of committing "clear error of judgment in the conclusion [the trial court] reached upon weighing of relevant factors." Disagreeing with the implementation of one of several permissible sanctions does not approach abuse of discretion, much less equate to abuse. If we stay true to and honor the appropriate standard of review, a discretionary decision of a trial judge must stand.

¶27. The case *sub judice* is strikingly similar to *Scoggins*. In *Scoggins*, the plaintiff alleged injuries to her foot, leg, and back. *Scoggins*, 743 So. 2d at 991. In response to interrogatory questions about past injuries to areas affected by the accident, Scoggins falsely swore, "I have never sustained an injury to the portions of my body I claim were injured in the accident, except that in 1958 . . . [I] received a pinched nerve in my back." *Id.* At her deposition, she falsely testified "she had no problems before the accident." *Id.* Contrastingly, medical records revealed that Scoggins had been "examined and/or treated for pain, numbness and/or arthritis in her left leg, back, hip and/or spine" on numerous occasions prior

15

to the accident. *Id.* at 992. The trial court, exercising its discretion, granted a dismissal, finding Scoggins's explanations for omitting the information not credible. *Id.*

¶28. In today's case, the Ashmores offered no explanation in response to the Mississippi Defendants' motion to dismiss, either by affidavit or live testimony at the hearing. In *Scoggins*, we affirmed the trial court's dismissal, concluding that "Scoggins wilfully submitted false answers to interrogatories and knowingly did not answer deposition questions truthfully." *Id.* at 997.

¶29. The trial court found a pattern of "willful misrepresentations" and a "deliberate attempt to subvert justice" by both Ashmores. David Ashmore not once, but twice, denied in interrogatory answers having "any injuries prior to the subject motor vehicle accident which affected the same part or parts of his body as the injuries which were incurred as a result of the subject motor vehicle accident [back and legs]." The third time David answered the interrogatory, he revealed for the first time that he previously had been diagnosed with coronary heart disease and kidney stones, but again maintained no other prior injuries to the areas of his body which he claimed were injured in the accident. At his deposition, David changed his story again. He then admitted to previous injuries to his back and right knee, which required surgery, along with a subsequent left-knee injury. He continued to deny prior surgery to his left knee. After being confronted with medical records to the contrary, Ashmore's attorney acknowledged at the hearing on the motion to dismiss, that David had had surgery "on both knees." Trial judges have the right to rely on the representations presented to them by attorneys. *See Noxubee County v. Long*, 141 Miss. 72, 106 So. 83, 85

16

(1925) (litigant "is bound by the admissions and stipulations of its attorneys touching the action to the same extent that an individual would be bound."); *see Lane v. Woodland Hills Baptist Church*, 285 So. 2d 901, 905 (Miss. 1973) ("[A]n attorney may bind his client by stipulation or admission of facts during the course of the trial"); *see also Accident Ins. Co. v. Classic Bldg. Design, LLC*, 2012 WL 3913090, *12 n.8 (S.D. Miss. Sept. 7, 2012) ("It is well settled under Mississippi law that an attorney has the authority to bind his client to stipulations or admissions of fact"). The dissent posits more proof must be required. If there was a credible explanation (the explanation in *Scoggins* was as not credible), the Ashmores should have made themselves available to rebut the evidence presented to and relied upon by the trial judge.

¶30. The trial court further found that Debra was attempting to double-dip by seeking "the same type of compensation" in a separate suit, which she adamantly denied during her deposition. Just as in *Scoggins*, the Ashmores "wilfully submitted false answers to interrogatories and knowingly did not answer deposition questions truthfully." *Scoggins*, 743 So. 2d at 997.

¶31. The dissent offers possible excuses never offered by the Ashmores at the hearing, reweighs evidence, and then posits that "[f]or the most part, however, the Ashmores either clarified omissions in their depositions or attempted to explain the inconsistencies." (Dis. Op. ¶51). This argument misses the mark. The decision before the trial court was whether a dismissal achieves the appropriate deterrent effect and prevents parties from "get[ting] away

17

with lying under oath without a meaningful penalty." *See Pierce*, 688 So. 2d at 1391;[12]

*Scoggins*, 743 So. 2d 994. A dismissal serves that purpose.

¶32. The trial court considered our holdings in *Pierce* and *Scoggins* before making its ruling. We discern nothing in the record that (1) suggests an "arbitrary" or "clearly erroneous" ruling was made by the learned trial judge, or (2) instills in this Court a "definite and firm conviction that the court below committed a clear error of judgment." These are the guidelines we are bound to follow. *See Allen*, 934 So. 2d at 1013 (affirming dismissal because "[t]he trial court certainly weighed the relevant factors in reaching its conclusion and no evidence exists in the record to support a finding of a clear error of judgment or abuse of by the trial court").

## CONCLUSION

¶33. We affirm the trial court's grant of the Mississippi Defendants' Motion to Dismiss.

¶34. **AFFIRMED**.

**WALLER, C.J., DICKINSON, P.J., LAMAR, PIERCE AND COLEMAN, JJ., CONCUR. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND CHANDLER, JJ.**

**KING, JUSTICE, DISSENTING:**

¶35. Prior to issuing the "death penalty" of civil sanctions, the trial court failed to adequately apply the correct standard to the unique facts presented in today's case. Because

___

[12]Lesser sanctions "would not achieve the deterrent value of the dismissal. Since any other sanction beside dismissal would virtually allow the plaintiff to get away with lying under oath without a meaningful penalty, the trial court's decision regarding this factor was correct." *Pierce*, 688 So. 2d at 1391.

18

this case should be remanded for a comprehensive hearing to determine the appropriate sanction, if any, I dissent.

¶36. Although the majority correctly quotes this Court's standard of review applied to discovery sanction cases, the majority ignores this Court's longstanding guidance to trial courts: "the trial court should dismiss a cause of action for failure to comply with discovery only under the most extreme circumstances." *Pierce v. Heritage Props., Inc.*, 688 So. 2d 1385, 1388 (Miss. 1997) (citing *Hapgood v. Biloxi Reg'l Med. Ctr.*, 540 So. 2d 630, 634 (Miss. 1989)). When determining the appropriateness of sanctions under Rule 37, the following four factors are considered:

> First, dismissal is authorized only when the failure to comply with the court's order results from wilfulness or bad faith, and not from the inability to comply. Dismissal is proper only in situation[s] where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. Another consideration is whether the other party's preparation for trial was substantially prejudiced. Finally, dismissal may be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client, or when a party's simple negligence is grounded in confusion or sincere misunderstanding of the court's orders.

*Id.* at 1389 (quoting *Batson v. Neal Spelce Assocs.*, 765 F. 2d 511, 514 (5th Cir. 1985)).

¶37. In *Pierce*, 688 So. 2d at 1392, this Court upheld the trial court's dismissal under Rule 37. The plaintiff in *Pierce* was injured when a ceiling fan in her apartment fell. *Id.* at 1387. The jury returned a verdict in favor of the plaintiff, but the trial court granted a new trial due to an improper closing argument. *Id.* In the first trial and during discovery for the second trial, the plaintiff maintained that there were no eyewitnesses to the incident. *Id.* The defendants received an anonymous phone call after the first trial stating that the plaintiff was

19

not alone when the incident occurred. *Id.* at 1388. The plaintiff identified the witness only after she realized the defendants were aware of the witness's existence. *Id.* In his deposition, the witness confirmed that he was present during the incident. *Id.* This Court found that dismissal was proper in *Pierce* because the plaintiff's failure to disclose the existence of a material witness was willful, "obstructed the progress of litigation," and constituted bad faith. *Id.* at 1390.

¶38. In *Scoggins v. Ellzey Beverages, Inc.*, 743 So. 2d 990, 997 (Miss. 1999), this Court affirmed the trial court's dismissal of a plaintiff's personal-injury claim when the plaintiff concealed material parts of her medical history. The plaintiff in *Scoggins* complained of injuries to her foot, leg, and back. *Id.* at 991. The plaintiff denied having prior injuries to these areas in both her interrogatory responses and deposition testimony. *Id.* at 991-92. After the plaintiff responded to discovery and provided deposition testimony, the defendants obtained her medical records, which showed that she had been treated for pain, numbness, and arthritis in her legs, back, hips, shoulder, neck, and elbows for approximately eighteen years before her accident. *Id.* at 992. This Court found that dismissal was proper in *Scoggins* because the plaintiff "wilfully submitted false answers to interrogatories and knowingly did not answer deposition questions truthfully." *Id.* at 997.

¶39. Although this Court has upheld trial courts' dismissals under Rule 37, we also have found that dismissal is not appropriate in other circumstances. In *Wood ex rel. Wood v. Biloxi Public School District*, 757 So. 2d 190, 195 (Miss. 2000), this Court reversed the trial court judgment when the dismissal was based on one interrogatory response that could have

20

been interpreted in various ways. The plaintiff in *Wood* was injured when a school bus rear-ended his car. *Id.* at 192. The plaintiff responded to an interrogatory about the extent of his injuries; the response stated: "These injuries affected my attitude, my concentration, my school work, and my ability to do manual labor. I no longer am able to enjoy tinkering with automobiles as the stooping, bending, and squatting are painful." *Id.* During discovery, the defendants obtained surveillance video of the plaintiff bending, twisting, and squatting while performing tasks at a tire shop. *Id.* The defendants filed a motion to dismiss under Rule 37, claiming that the plaintiff had lied in his interrogatory response, and the trial court granted the motion. *Id.* We reversed, finding that the allegedly false interrogatory response was open to multiple interpretations. *Id.* at 194. Further, this Court recognized that the plaintiff had testified in his deposition that he was able to perform manual labor, but that it was more painful than before the accident. *Id.* at 194. This Court stated:

> The School District would have a much stronger case if Wood had asserted during his deposition that he was in fact unable to perform his work functions as before. . . . [T]he fact remains that Wood acknowledged in his deposition that he was able to perform tasks as before the accident. The present case does not involve one of "those rare instances where the conduct of a party is so egregious that no other sanction will meet the demands of justice," the trial court abused his discretion in concluding otherwise.

*Id.* at 194-95 (quoting *Scoggins*, 743 So. 2d at 997).

¶40. The unique and particular facts of today's case fall somewhere between the egregious acts contemplated by *Pierce* and *Scoggins* and the single, vague discovery response in *Wood*. As such – and as discussed in more detail below – the trial court should have held a

21

comprehensive hearing on the Defendant's motion prior to issuing the "death penalty" of sanctions.

¶41.    The majority implies that, because the trial court in today's case cited our holdings in *Pierce* and *Scoggins*, that the correct legal standard was applied and this case should be affirmed. (Maj. Op. ¶ 11.)  Mere citation to this Court's standard is not sufficient.  The standard must be actually and correctly applied, not just passingly referenced.

¶42.    Based on *Pierce*, 688 So. 2d at 1398, the first consideration is whether "the failure to comply with the court's order results from wilfulness or bad faith, and not from the inability to comply."  The trial court in today's case found that the Ashmores' interrogatory responses and deposition testimony contained "willful misrepresentations."  David's interrogatory responses did omit material parts of his medical history.  But, unlike the plaintiffs in *Pierce* and *Scoggins*, David clarified these omissions in his deposition when he admitted having a prior back injury, right-knee surgery, and an injury to his left leg.  In his deposition, David denied having left-knee surgery prior to the accident.  And the medical records the Mississippi Defendants cite in support of their contention that David had surgery on his left knee prior to the accident do not unequivocally establish that as fact.  For example, the Mississippi Defendants cite an October 1, 2008, medical record which states that David had surgery on his left and right knees.  In response, the Ashmores point out that David did, in fact, have surgery on his left knee on July 17, 2008 – approximately four months *after* the accident.  Further, although David provided a complete medical-records release to the Mississippi Defendants, they have produced only one medical record from before the

22

accident which supports their contention that David had left-knee surgery prior to the accident – a March 10, 2008, entry in David's family physician's record stating that David "has had surgery before on his knees." They have not, however, produced actual records of the alleged surgery.

¶43. The Mississippi Defendants also claim that the Ashmores provided false testimony regarding the bases of David's disability. David and Debra both stated in their depositions that David's disability was attributable only to his injuries from the car accident. David's Social Security application, however, listed David's heart problems and diabetes as conditions that contributed to his inability to work, in addition to the injuries from the car accident. Interestingly, Debra testified in her deposition that David's heart problems and diabetes were exacerbated by the surgeries and medication he received as a result of the accident.

¶44. The Mississippi Defendants also claim that Debra provided false testimony as to whether she was seeking damages for her nursing services and emotional distress in the present case as well as the unrelated nursing-home-negligence case she filed on behalf of her father. While there are inconsistences in Debra's testimony and written discovery, these statements, standing alone, would not warrant sanctions. Like the interrogatory response in *Wood*, Debra's interrogatory response in the nursing-home case was vague and open to more than one interpretation. The response stated that Debra had not been *treated* for mental or emotional distress in a matter unrelated to the nursing-home case – for example, today's case. The response did not, however, state that Debra had not *experienced* mental or emotional

23

distress. Further, although Debra testified that she was not seeking damages for her nursing services in the nursing-home case, the complaint for the nursing-home case clearly stated that she was seeking this type of damages. It should be noted, however, that the nursing-home complaint had not been served at the time of Debra's deposition.

¶45. The second consideration in determining whether a trial court abused its discretion in dismissing a case with prejudice under Rule 37 is whether the "deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions." *Id.* Essentially, the trial court must consider whether lesser sanctions such as attorneys' fees, limiting testimony, or fines would provide a sufficient deterrent value. As part of this consideration, courts should be mindful of deterring discovery abuses for not only the present case, but for future cases as well. *White v. White*, 509 So. 2d 205, 209 (Miss. 1987). Dismissal for discovery violations is "draconian" and a "remedy of last resort" that should only be applied in extreme circumstances. *Id.*

¶46. In *Scoggins*, 743 So. 2d at 994, the trial court provided a detailed analysis of the lesser sanctions available and why the sanctions would not deter discovery abuse in that case. The trial court considered fines and awarding attorneys' fees to the plaintiff that were attributable to its Rule 37 motion. *Id.* Because discovery in the case had concluded, the trial court found that lesser sanctions would not provide an adequate deterrent. *Id.*

¶47. In today's case, the trial court recognized the lesser-sanctions discussion in *Scoggins*, but failed to analyze whether lesser sanctions would be appropriate in this case:

24

> The Court is cognizance [sic] of the fact the Supreme Court has mandated it impose the least restrictive sanction that will accomplish the purpose for which it is imposed. The Court has also considered the Supreme Court's discussion of simply allowing for vigorous cross-examination or imposing fees or reducing the verdict. As to imposing fees or reducing the verdict, the Supreme Court noted in *Scoggins*, the trial court properly found such a sanction creates several problems such as what to do if the defense obtains a verdict in its favor.
>
> . . .
>
> As stated *supra*, the Court is aware of the precedent set by the case law on this issue. Dismissal is an extreme sanction. However, the Court having carefully reviewed the pleadings and the transcript finds dismissal is appropriate in this action. As noted by the trial court in *Scoggins*, "the Court finds that perhaps the most compelling reason for granting the Defendant's motion is to redress an apparently deliberate attempt to subvert the judicial process."

Although the trial court stated that dismissal is "appropriate in this action" and discussed this Court's holding in *Scoggins*, the reasoning behind this conclusion is totally absent. Levying the "death penalty" of discovery sanctions requires more than recognizing this Court's precedent with respect to these sanctions; the precedent must be applied to the facts of the present case.

¶48. The third factor to be considered is whether the other party's preparation for trial was substantially prejudiced. *Pierce*, 688 So. 2d at 1389. The Mississippi Defendants claim that they suffered prejudice in wasted litigation resources, through general frustration, and "re-working" their litigation strategy. The trial court's order does not address prejudice to the Mississippi Defendants. And at the hearing, the trial court stated that it was "not so concerned" with prejudice. *Pierce*, 688 So. 2d at 1391, recognized that there is not a

25

requirement that the defendant be substantially prejudiced by the plaintiff's conduct. The court may, however, consider prejudice in determining whether a sanction is warranted. ***Id.***

¶49. A party will likely suffer at least some prejudice in the case of incomplete or incorrect discovery responses. *See **id.*** at 1389 ("A false answer is in some ways worse than no answer [because] it misleads and confuses the party."). In today's case, however, discovery was still in its infancy. The Mississippi Defendants noticed the depositions of thirty-four expert witnesses, and only one expert deposition had occurred prior to the hearing on the motion to dismiss.

¶50. The final consideration is whether the "neglect is plainly attributable to an attorney rather than a blameless client, or when a party's simple negligence is grounded in confusion or sincere misunderstanding of the court's orders." ***Id.*** at 1389. The trial court did not specifically address this factor in his order dismissing the case. The Ashmores do not claim that the neglect is attributable to their attorney, but instead claim that the confusion stems from David not knowing that surgical clips were used during his heart surgery. Surgical clips were, in fact, placed near David's left knee during a heart surgery.

¶51. There are clear omissions and inconsistencies in the Ashmores' discovery responses and deposition testimony. And these omissions may warrant some type of sanction. *See **Pierce***, 688 So. 2d at 1389. For the most part, however, the Ashmores either clarified omissions in their depositions or attempted to explain the inconsistencies – for example, Debra's testimony relating to David's heart problems and diabetes being exacerbated by his car-accident injuries.

26

¶52.   Further, the facts of today's case are unique and distinguishable from *Pierce* and *Scoggins*.  In those cases, there was no dispute as to whether the plaintiffs had willfully omitted information in discovery.  The plaintiff in *Pierce*, 688 So. 2d at 1388, failed to disclose the existence of a witness, despite the case going through discovery and trial; but she did not contest the existence of the witness.   And the plaintiff in *Scoggins*, 743 So. 2d at 997, did not disclose relevant medical history in both her interrogatory responses and deposition; but she simply rebutted the discovery-violation claim by stating that she had a poor memory.  In the present case, actual disputes exist as to whether the Ashmores willfully concealed information.  The parties disagree as to whether David had left-knee surgery prior to the accident.  And the parties also contest the bases of David's disability.

¶53.   Because of the particular facts of this case, I find that the trial court should have conducted a comprehensive hearing on the Mississippi Defendants' motion to dismiss. While counsel for each side provided argument on the motion, testimony from the Ashmores and further medical evidence would have aided in resolving the disputes discussed above. I recognize that an in-depth hearing is not required – or even necessary – in most cases. *See Allen v. Nat'l R.R. Passenger Corp.*, 934 So. 2d 1006, 1016 (Miss. 2006).  But in today's case, this type of hearing is needed to fully analyze the issues presented by the Mississippi Defendants' motion to dismiss and the Ashmores' response to the motion, as well as to determine the appropriate sanction.

¶54.   For this same reason, an order detailing the trial court's analysis for each *Pierce* factor is necessary in today's case.  The trial court's order did not thoroughly address each of the

four considerations. Again, I recognize that this type of analysis is not necessary for all Rule 37 motions. *See Smith v. Tougaloo Coll.*, 805 So. 2d 633, 640-41 (Miss. Ct. App. 2002). But the facts of today's case require it. For example, although the trial court's order cited the lesser-sanction analysis in *Scoggins*, the trial court did not address why lesser sanctions, such as costs associated with additional discovery or impeachment, would not provide a sufficient deterrent in today's case. Considering the discussion above, lesser sanctions may very well be appropriate; and a comprehensive hearing will likely aid in determining the proper sanction.

¶55. To be clear, considering the unique facts of today's case, I find that the trial court should have held a comprehensive hearing and entered a detailed order analyzing the *Pierce* factors. Contrary to the majority's assertion that I am "offering relief" for the Ashmores, I am simply ensuring that the trial court is compliant with this Court's directive in discovery sanction cases – that "the trial court should dismiss a cause of action for failure to comply with discovery *only under the most extreme circumstances*." *Pierce*, 688 So. 2d at 1388 (emphasis added); *Allen*, 934 So. 2d at 1008. This Court must "consider[] whether the [trial court's] decision was one of several reasonable ones which could have been made." *Id.* As discussed above, the unusual facts of today's case present questions as to whether this is one of the "most extreme circumstances" contemplated by this Court's precedent. As such, whether the trial court's decision was reasonable cannot be determined from the record.

¶56. For the reasons discussed above, I would reverse the trial court's judgment and remand the case for proceedings consistent with this opinion.

28

**KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION.**