CARLTON, J., DISSENTING:
 

 ¶ 24. I respectfully dissent from the majority's opinion finding that the circuit court reversibly erred in dismissing Keith's negligence claims based on discovery violations. Since I find no error in the circuit court's dismissal, I would affirm.
 

 ¶ 25. Keith and his wife Lakeisha filed suit against T. Mart for injuries Keith claimed to have sustained as the result of a motor vehicle accident that occurred as he was exiting a Texaco station. Keith alleged that shrubbery on T. Mart's property negligently inhibited his view when exiting the gas station. Lakeisha filed a claim for loss of consortium-a derivative claim stemming from Keith's injuries.
 

 ¶ 26. During the course of pretrial discovery, T. Mart served Keith with interrogatories related to his prior medical history and treatment. Specifically, the interrogatories asked whether Keith ever had been involved in any other accident or incident, or had any illness or sickness of any kind and of any type or severity, which required or resulted in him being seen or treated by any medical professional. Keith responded with information regarding a 2005 accident in a Tupelo Wal-Mart parking lot. However, he failed to provide any information as to any injuries that resulted from the accident. Keith did state that he saw two separate medical providers following the incident.
 

 ¶ 27. T. Mart later deposed Keith and further questioned him regarding his medical history. When asked whether he ever had experienced prior neck problems, Keith responded that he had not. When asked whether he ever had experienced prior lower back issues, Keith responded, "Not lower back."
 

 ¶ 28. Following Keith's deposition, T. Mart obtained Keith's prior medical records, which revealed that Keith indeed had
 received extensive medical treatment for his neck and lower back in 2005.
 
 [2]
 
 In response, T. Mart filed a motion to dismiss Keith's complaint pursuant to Mississippi Rule of Civil Procedure 37(b)(2) and 37(e), claiming that Keith provided "willful, false deposition testimony and grossly evasive, misleading discovery responses." Following a hearing, the circuit court granted the motion to dismiss with prejudice, concluding that under the circumstances, no sanction less than dismissal would be appropriate to satisfy the deterrent value of Rule 37. Because Lakeisha's claim was derivative in nature, it was dismissed with prejudice as well.
 

 ¶ 29. We review a trial court's dismissal of a cause of action as a sanction for discovery-abuse for abuse of discretion.
 
 Ashmore v. Miss. Auth. on Educ. Television
 
 ,
 
 148 So.3d 977
 
 , 981 (¶ 9) (Miss. 2014) ;
 
 see also
 

 Scoggins v. Ellzey Beverages, Inc.
 
 ,
 
 743 So.2d 990
 
 , 996 (¶ 27) (Miss. 1999). The Mississippi Supreme Court "has long held that our trial courts have the discretion to impose sanctions for discovery violations [that] result from willful neglect [or] willful disobedience or cause undue advantage and surprise."
 
 Eaton Corp. v. Frisby
 
 ,
 
 133 So.3d 735
 
 , 748 (¶ 49) (Miss. 2013). However, the supreme court also has cautioned that a "trial court should dismiss a cause of action for failure to comply with discovery only under the most extreme circumstances."
 
 Ashmore
 
 ,
 
 148 So.3d at 981
 
 (¶ 9).
 

 ¶ 30. "When [an appellate court] reviews a decision that is within the trial court's discretion, it first asks if the court below applied the correct legal standard."
 

 Id.
 

 (citing
 
 Pierce v. Heritage Props. Inc.
 
 ,
 
 688 So.2d 1385
 
 , 1388 (Miss. 1997) ). "If the trial court applied the right standard, then [the c]ourt considers whether the decision was one of several reasonable ones which could have been made."
 

 Id.
 

 We will affirm a trial court's dismissal as a sanction for a discovery violation "unless there is a definite and firm conviction that the trial court committed a clear error of judgment in the conclusion it reached upon weighing [the] relevant factors."
 
 Avare v. Gulfside Casino P'ship
 
 ,
 
 178 So.3d 796
 
 , 798 (¶ 4) (Miss. Ct. App. 2013) ;
 
 see also
 

 Eaton Corp.
 
 ,
 
 133 So.3d at 747
 
 (¶ 45). Upon appellate review of a trial court's dismissal of a cause of action for failure to comply with discovery, this Court should engage in "measured restraint" and "should not decide whether it would have dismissed the original action but whether dismissal amounted to clear error."
 
 Kinzie v. Belk Dep't Stores L.P.
 
 ,
 
 164 So.3d 974
 
 , 977 (¶ 4) (Miss. 2015). "We will, however, review issues of law de novo."
 
 Avare
 
 ,
 
 178 So.3d at 798
 
 (¶ 4).
 

 ¶ 31. Keith argues that the circuit court erred in finding that he wilfully misrepresented his medical history during discovery. As stated, Keith's medical records reflect that he received injuries to his neck, lower back, and shoulder as the result of a car accident in 2005. However, during Keith's deposition, T. Mart's counsel asked Keith whether he had any prior problems with his neck and lower back. Keith denied ever suffering any lower back problems, and he mentioned only the removal of a cyst from the back of his neck when he was in eighth grade.
 

 ¶ 32. At the hearing before the circuit court, Keith denied that he provided false testimony. In support of his argument, Keith asserted that he had not signed some of the prior medical records. He also claimed that the medical records were not "author[ed]" or authenticated and that the
 records did not conclusively establish that Keith specifically had complained of prior lower back pain. The circuit court found these arguments without merit.
 

 ¶ 33. On appeal, however, Keith now argues that he did not lie about the injuries stemming from the 2005 car accident; rather, Keith asserts that he "merely forgot" that he suffered neck and lower back pain. Keith maintains that the 2005 accident occurred seven years before he was deposed, and his biggest complaint from the accident was his shoulder-not his neck or lower back.
 

 ¶ 34. I find this argument wholly unpersuasive and without merit. That is because "[i]t is a long-established rule in this state that a question not raised in the trial court will not be considered on appeal."
 
 City of Hattiesburg v. Precision Constr. LLC
 
 ,
 
 192 So.3d 1089
 
 , 1093 (¶ 18) (Miss. Ct. App. 2016) (quoting
 
 Adams v. Bd. of Sup'rs of Union Cty.
 
 ,
 
 177 Miss. 403
 
 , 414,
 
 170 So. 684
 
 , 685 (1936) ). "The rule is that a trial judge cannot be put in error on a matter which was never presented to him for decision."
 

 Id.
 

 A review of the record reveals that Keith never presented this argument to the circuit court-therefore, I decline to address the merits of it in this separate opinion.
 
 See
 
 id.
 

 ¶ 35. Keith argues that the circuit court abused its discretion in dismissing his case with prejudice because lesser sanctions would have served the deterrent purpose of Rule 37. I disagree. Rule 37(b)(2)(C) provides:
 

 If a party ... fails to obey an order to provide or permit discovery, including an order made under subsection (a) of this rule, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
 

 an order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed,
 
 or dismissing the action or proceeding or any part thereof
 
 , or rendering a judgment by default against the disobedient party[.]
 

 (Emphasis added). Rule 37(e) further provides that "[i]In addition to the application of those sanctions, specified in Rule 26(d) [of the Mississippi Rules of Civil Procedure] and other provisions of this rule,
 
 the court may impose upon any party or counsel such sanctions as may be just
 
 [.]" (Emphasis added).
 

 ¶ 36. Building on Rule 37, I further acknowledge that the supreme court has established the following factors for evaluating the appropriateness of dismissal as a sanction for discovery violations:
 

 [ (1) ] First, dismissal is authorized only when the failure to comply with the court's order results from wilfulness or bad faith, and not from the inability to comply. [ (2) ] Dismissal is proper only in situation[s] where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. [ (3) ] Another consideration is whether the other party's preparation for trial was substantially prejudiced. [ (4) ] Finally, dismissal may be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client, or when a party's simple negligence is grounded in confusion or sincere misunderstanding of the court's orders.
 

 Pierce
 
 ,
 
 688 So.2d at
 
 1389 ;
 
 see also
 
 M.R.C.P. 37(b)(2)(C). "The
 
 Pierce
 
 court explained that these factors are considerations and not four absolute requirements."
 
 Avare
 
 ,
 
 178 So.3d at 799
 
 (¶ 8) (citing
 
 Pierce
 
 ,
 
 688 So.2d at
 
 1389 ). "The supreme court has further held that willfulness or bad faith may be so clearly evidenced that the four
 
 Pierce
 
 factors will be irrelevant to the upholding of dismissal."
 

 Id.
 

 Furthermore, "[a] finding of willfulness may be based upon either a willful, intentional, and bad faith attempt to conceal evidence[,] or a gross indifference to discovery obligations."
 
 Pierce
 
 ,
 
 688 So.2d at 1390
 
 .
 

 ¶ 37. In its order dismissing Keith's suit with prejudice, the circuit court herein weighed each of the
 
 Pierce
 
 factors and ultimately concluded that each factor weighed in favor of dismissal. In applying the
 
 Pierce
 
 factors, the circuit court also set forth Keith's misrepresentations in detail. I now turn to review the circuit court's application of the
 
 Pierce
 
 factors.
 

 ¶ 38. As to the first factor, the circuit court stated:
 

 A comparison of [Keith's] answers to interrogatories and deposition testimony with his pre-accident medical records show that he intentionally and deceitfully misrepresented his pre-existing medical condition with respect to his neck and back .... A consideration of the facts presented herein ... demonstrates that [Keith]'s misrepresentation regarding his pre-existing medical condition was willful and in bad faith.
 

 The record clearly supports the circuit court's findings as to this factor. Regarding his prior medical history, Keith was specifically asked the following through T. Mart's interrogatories:
 

 INTERROGATORY NUMBER 9
 

 : Before or after the date of the occurrence which is the subject of this action, had you ever been involved in any other accident or incident or had any illness or sickness of any kind and of any type or severity, which required you to be seen or resulted in your being seen or treated by any doctor, hospital[,] or other medical provider? If so, please state in detail the following:
 

 (a) The date and place of the accident, incident, illness[,] or sickness;
 

 (b) A description of the accident, incident, illness[,] or sickness;
 

 (c) Names, addresses and phone numbers of witnesses to the accident, incident, illness[,] or sickness;
 

 (d) The name of the defendant (or person or entity against whom you made your claim), if lawsuit, action[,] or claim was made on your behalf;
 

 (e) The court or other tribunal where any action or claim was filed, together with any identifying action number;
 

 (f) The names, addresses[,] and phone numbers of all medical doctors, any other medical personnel, hospitals, or other medical facilities or medical providers wherein you received treatment as a result of the accident, incident, illness[,] or sickness[ ] identified above.
 

 RESPONSE TO INTERROGATORY NUMBER 9
 

 : [Keith] was involved in an automobile accident in 2005 on the Wal-Mart parking lot in Tupelo, Mississippi, when [Keith's] vehicle was struck by a vehicle being driven the wrong way by an employee of Lencare Medical Supply. [Keith] does not recall the name of the driver. [Keith] was seen by a doctor at Semmes Murphy Neurologic and Spine Institute ...; Debra Hill, NP, and Reenea Willis, PT, of Rehab Solutions, PLLC. No lawsuit was filed, however, [Keith] was compensated for damages by the insurance company for Lencare Medical Supply.
 

 INTERROGATORY NUMBER 10
 

 : Please identify the names, addresses and phone numbers of your regular family
 doctor and the names, addresses and phone numbers of any other medical doctors or any other medical personnel not previously listed, who have treated you or given you any medical advice for the past ten years.
 

 RESPONSE TO INTERROGATORY NUMBER 10
 

 : Dr. Norris Crump-898 Lynden Blvd., Tupelo, MS 38801[;] and Debra Hill, NP-Plantersville Clinic, 2489 Main St., Plantersville, MS 38862[.]
 

 ¶ 39. Keith's subsequent deposition-testimony addressed the medical records reflecting that Keith injured his neck, lower back, and shoulder as the result of a car accident in 2005. During Keith's deposition, T. Mart's counsel asked Keith whether he suffered any problems with his neck, head, or lower back prior to the accident at issue. Keith denied ever suffering any lower back problems or headaches before the accident, and he mentioned only the removal of a cyst from the back of his neck when he was in eighth grade.
 

 ¶ 40. Following the information provided by Keith in his sworn answers to interrogatories and deposition testimony, T. Mart obtained Keith's prior medical records, which reflected a vast medical history. T. Mart included Keith's medical records in its motion to dismiss and attached the records for the circuit court to review. The circuit court accordingly dismissed Keith's complaint after finding that he had misrepresented his prior medical history.
 

 ¶ 41. A review of Keith's medical records herein reflects that Keith indeed suffered from neck and low back pain beginning in April 2005, six years before the accident at issue in this case. These medical records reveal the following relevant treatment sought by Keith in response to suffering from neck and low back pain:
 

 April 4, 2005
 
 -Keith received treatment at the Plantersville Clinic for
 
 low back pain
 
 that started two days earlier.
 

 August 25, 2005
 
 -Keith was involved in an automobile accident and received treatment at North Mississippi Medical Center. The record from North Mississippi Medical Center reflects that Keith's chief complaint was "
 
 LOW BACK PAIN
 
 ."
 

 August 31, 2005
 
 -Keith returned to the Plantersville Clinic for treatment due to continued pain from the accident. The records states that Keith complained that he "
 
 hurts from neck all the way down back[,] has burning pain
 
 " and had suffered "leg weakness and burning since [the motor vehicle accident]-
 
 hurting at night in back and legs
 
 ."
 

 September 9, 2005
 
 -Keith received MRIs of the lumbar spine, thoracic spine, and cervical spine. On each of the MRI reports, the indication was "
 
 neck and back pain
 
 ." The MRI of the cervical spine showed "mild reversal of the normal lordotic curvature of the cervical spine" and "mild disc osteophyte complex mainly at the C3-C4 and C4-C5 levels but borderline to mild spinal stenosis as described."
 

 September 10, 2005
 
 -Keith received treatment at North Mississippi Medical Center due to "
 
 neck and back problems
 
 " from the August 2005 wreck.
 

 October 14, 2005
 
 -Keith received treatment at the Plantersville Clinic due to "[left] shoulder pain." The record shows that Keith complained that it hurt to "raise [his] arm" and he suffered from "
 
 low back pain, neck pain
 
 " that "burns down into [his] buttock." The record reflects that Keith stated that physical therapy "does not help" and that he was not taking any medicine. Keith was then diagnosed with "shoulder strain and
 
 lumbar strain
 
 ."
 

 October 19, 2005
 
 -Keith received treatment at Semmes Murphey Neurologic & Spine Institute. There, Keith complained of "left shoulder,
 
 neck and back pain
 
 , without radicular symptomatology." Keith also complained of "
 
 severe pain in his back
 
 " when he had to stand for prolonged periods. A doctor performed a physical examination which showed "cervical range of motion is limited on forward flexion, hyperextension[,] and lateral bending.... [Keith] has some
 
 myofascial trigger points in the lumbar area with a restricted range of motion in the lumbar spine
 
 on forward flexion and hypertension." Keith was diagnosed with "
 
 cervical and lumbar spasms
 
 " and "left rotator cuff strain." The doctor prescribed physical therapy due to "cerv/LB pain" and "rotator cuff pain."
 

 November 11, 2005
 
 -Keith returned to Semmes Murphey Clinic due to "
 
 lumbar myofascial pain
 
 " as well as shoulder pain. The record reflects the doctor assessed that Keith suffered from "cervical myofascial spasms" and "
 
 lumbar myofascial spasms
 
 ." As a result, the doctor prescribed "
 
 aggressive physical therapy for myofascial release of the cervical and lumbar areas
 
 [.]"
 

 (Emphasis added). As stated, in light of this evidence, the circuit court found that Keith had wilfully and in bad faith misrepresented his prior medical history, thus favoring dismissal of his cause of action.
 

 ¶ 42. In
 
 Eaton Corp
 
 .,
 
 133 So.3d at 752
 
 (¶ 60), the supreme court found "no abuse of discretion in the trial court's decision to impose [a] monetary sanction issued [as the result of serious pretrial discovery misconduct], despite the absence of a motion to compel." The
 
 Eaton
 
 court held that "gross indifference" or "willful negligence" of a discovery requirement are both are " 'willful' violations and an abuse of the truth-seeking process."
 

 Id.
 

 at 748
 
 (¶ 49). The supreme court further explained that:
 

 A willful violation of a discovery rule occurs when there is a conscious or intentional failure to comply with the rule's requirements. A finding of willfulness may be based upon either a willful, intentional, and bad faith attempt to conceal evidence or a gross indifference to discovery obligations.
 

 Id.
 

 (citing
 
 Pierce
 
 ,
 
 688 So.2d at
 
 1388 ).
 

 ¶ 43. In his brief to this Court, Keith admits that he "was wrong when he denied having ever complained of neck and lower back pain prior to the 2011 accident." As such, I find the evidence sufficient to support the circuit court's conclusion.
 
 See
 

 Conklin v. Boyd Gaming Corp.
 
 ,
 
 75 So.3d 589
 
 , 595 (¶ 19) (Miss. Ct. App. 2011) (finding willfulness where plaintiff knew he had undergone prior treatment for injuries but chose not to admit such during discovery).
 

 ¶ 44. As to the second
 
 Pierce
 
 factor-whether Rule 37's deterrent value could be achieved through less drastic sanctions-the circuit court found dismissal was the only proper remedy. I agree, as "[t]he other sanctions considered by the [trial] court would not achieve the deterrent value of the dismissal.... [A]ny other sanction beside dismissal would virtually allow the plaintiff to get away with lying under oath without a meaningful penalty[.]"
 
 Pierce
 
 ,
 
 688 So.2d at 1391
 
 .
 

 ¶ 45. Next, regarding the factor of prejudice, the circuit court found that Keith's false representations indeed prejudiced T. Mart, thus weighing in favor of dismissal. Keith, however, argues on appeal that because the misrepresentations were discovered prior to trial, no prejudice resulted. I disagree. First, "there is no requirement that the defendant be substantially prejudiced by the absence of evidence."
 

 Id.
 

 (holding substantial prejudice is a mere consideration of the court, not a requirement).
 

 Second, there is nothing in the record to illustrate that the circuit court erred in finding Keith's conduct prejudiced T. Mart during trial preparation. As such, I agree with the circuit court as to this factor.
 

 ¶ 46. Finally, the circuit court found that Keith's deceptive responses were in no way attributable to his attorneys, nor were the inquiries regarding his prior medical history confusing. To that point, Keith makes no argument on appeal as to confusion or misunderstanding-again, he merely asserts that he "forgot." As that argument is procedurally barred, I find the record-evidence supports the circuit court's finding as to this prong.
 
 See
 

 Allen v. Nat'l R.R. Passenger Corp
 
 .,
 
 934 So.2d 1006
 
 , 1012 (¶ 16) (Miss. 2006). This issue is without merit.
 

 ¶ 47. In sum, I acknowledge that "[d]ismissal with prejudice is a sanction that should be imposed only in those rare instances where the conduct of a party is so egregious that no other sanction will meet the demands of justice."
 
 Scoggins
 
 ,
 
 743 So.2d at 997
 
 (¶ 36). "Further, where a party has frustrated the orderly judicial process by false or erroneous responses to interrogatories, that party should not be able to argue that its own conduct has removed it beyond the reach of sanctions."
 
 Avare
 
 ,
 
 178 So.3d at 801
 
 (¶ 15). In order "to reverse the trial court's decision, this Court must have a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors."
 

 Id.
 

 (quoting
 
 Pierce
 
 ,
 
 688 So.2d at
 
 1388 ).
 

 ¶ 48. The record reflects that the circuit court weighed the relevant
 
 Pierce
 
 factors and applied them to the evidence in the record. I can find no error warranting reversal. I thus find that the circuit court did not abuse its discretion when it held that any sanction less than dismissal would not adequately serve Rule 37's deterrent purpose. Accordingly, I would affirm the circuit court's judgment dismissing Keith's claim with prejudice. And because Lakeisha's loss-of-consortium claim is derivative of Keith's, I also would affirm the circuit court's judgment dismissing her claim with prejudice.
 
 See
 

 J & J Timber Co. v. Broome
 
 ,
 
 932 So.2d 1
 
 , 6 (¶ 19) (Miss. 2006) ("Mississippi law dictates that if the underlying personal injury claim is disposed of, the loss of consortium claim cannot be maintained on its own.").
 

 There were eight medical records the circuit court found relevant, ranging a period of eighteen months, wherein Keith complained of neck and back problems. Each record will be discussed in further detail below.