# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CA-01660-SCT

*ILLINOIS CENTRAL GULF RAILROAD COMPANY*
*d.b.a CANADIAN NATIONAL/ILLINOIS CENTRAL*

*v.*

*LUTHER W. McLAIN*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/13/2013 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CHARLES HENRY RUSSELL, III |
| | GEORGE H. RITTER |
| ATTORNEYS FOR APPELLEE: | DAVID NEIL McCARTY |
| | ROBERT WALTER SCHMIEDER |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED IN PART, REVERSED IN PART, AND RENDERED - 07/30/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., PIERCE AND COLEMAN, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     Luther W. McLain filed suit in 2004 against Illinois Central Railroad. He alleged that

Illinois Central's negligence caused his degenerative back injury.  At trial, McLain had

improper contact with a juror, committed perjury on the stand, and solicited a witness to

commit perjury on the stand to corroborate his story.  The trial judge reserved sanctioning

McLain until after the jury verdict.  The jury found for McLain, assessed his damages as

$150,000, and judgment was entered accordingly.  Thereafter, the trial judge sanctioned

McLain $500 for juror contact and $10,000 for solicitation of a witness. We affirm the

existing sanctions, but we hold that the trial judge abused her discretion in failing to impose further sanctions. Given the severity of committing perjury and solicitation and the cumulative effect of the violations taken as a whole, we reverse the judgment against Illinois Central, and we render judgment here in favor of Illinois Central.

## Facts and Procedural History

¶2. Luther McLain began working for Illinois Central Railroad (d/b/a Canadian National/Illinois Central) in 1970 and retired in 2002.[1] In 2001, McLain was diagnosed with spondylolisthesis, disc degeneration, and a disc rupture. In 2004, McLain brought the instant suit against Illinois Central claiming that Illinois Central was negligent in failing to provide McLain a safe place to work, safe methods for working, safe tools, and enough manpower. Illinois Central denied the allegations.

¶3. During discovery, in his deposition, McLain stated the heaviest thing he had lifted while working at Right of Way Consultants was a flag. The following exchange took place:

Q. . . . [W]hat is the heaviest thing you've had to pick up while working for Right of Way Consulting?

A. We have flags that we talked about the time before we set.

Q. Right. I remember that. Is the heaviest things you've had to pick up –

A. Yes.

Q. – while working for Right of Way?

A. Yes, sir. They – they not heavy.

___

[1] After retirement, in 2002, McLain began working for Right of Way Consultants.

When the trial began, a juror was excused because, against the trial judge's explicit instructions, McLain started a conversation with the juror on the elevator. The juror testified to the following:

> We got on the elevator together, and [McLain] said good morning. I said good morning and said it was a good day to be alive. And he made a comment and said that -- I said we know what's on this side, but we don't know what's on the other side. And he said that you've got to be stayed up, packed up and ready to go. And I said yes, sir, and that was the end of the conversation.

The trial judge reserved sanctioning on the issue until the verdict was returned. During McLain's testimony, the following exchange took place between Illinois Central's attorney and McLain:

> Q: Now, you were telling Mr. Schmieder that it's not a very physical job working for Right of Way Consultants, correct?
>
> A. Correct.
>
> Q. And what's the heaviest thing you have to lift; your flag?
>
> A. Yes, the flag goes along with the job.
>
> Q. All right. So you're saying the heaviest thing that you have to lift for Right of Way Consultants on the job is just the flag that you use to flag people with?
>
> A. You've got, you know, a small hammer you drive in the ground with.
>
> Q. A small hammer?
>
> A. Yes, sir.
>
> Q. Okay. And that's what you said in your deposition when we asked that question also, isn't it?
>
> A. I believe that's right, yes.

3

Q. Just a small hammer and a flag, that's the heaviest thing that you have to lift, right?

A. That's right.

Q. All right. Now, do you recall talking to Mr. Cecil Coker here recently over the phone?

A. Pardon?

Q. You're aware Mr. Coker is going to be testifying in this trial, aren't you?

A. Yes, sir, as far as I know.

Q. You're aware that he was going to be a witness in this trial, right?

A. That's what I hear.

Q. And do you remember within the last month placing a phone call to Mr. Coker?

A. We talked. We talked.

Q. And do you remember asking him not to mention that you actually have to lift and move a 40-pound portable derail?   You remember asking Mr. Coker –

A. As a matter of fact I did.

Q. – not to mention that?

A. I sure did.

Q. So you asked Mr. Coker, who's going to be testifying here, not to tell the jury that you actually have to pick up this 40-pound metal derail? That's what you asked him to do?

A. As a matter of fact I did. I remember that.

Q. You asked Mr. Coker to lie to this jury? You asked Mr. Coker to lie to the jury?

A.  If that's what it amounts to, I guess.

Again, the trial judge reserved sanctioning McLain until the verdict was returned.

¶4.    The jury returned a verdict in McLain's favor for $150,000.  The trial judge sanctioned McLain for two different violations: first, for McLain's improper contract with an empaneled juror, and second for McLain's unlawful solicitation of perjured testimony from a trial witness.  For the improper contact, the trial judge sanctioned McLain $500, and for the solicitation, the trial judge sanctioned McLain $10,000.

¶5.    Illinois Central filed a motion for additional sanctions.  Illinois Central claimed that the sanctions were not harsh enough to deter others from committing solicitation and perjury, that McLain had committed perjury by stating that the heaviest thing he lifted at Right of Way was a flag, not a forty-pound derail, and that McLain was loud and argumentative when Illinois Central's witnesses were on the stand.  The trial judge denied the motion based on the sole reason that McLain was not loud and argumentative.  Illinois Central then filed a supplement to its motion to dismiss, stating that McLain had lied in his response to its original motion to dismiss and for additional sanctions.  Illinois Central attached affidavits claiming that McLain first raised a forty-pound derail in 2009.  The trial court again denied the motion, even though McLain did not respond to it.  The order stated: "Being thoroughly advised in the premises, the Court finds that the motion is not well taken and should be denied."  Illinois Central appealed.

**Analysis**

¶6. On appeal, Illinois Central brings twelve issues. McLain responds with five more concise issues. Both parties address whether the trial judge appropriately sanctioned McLain based on his misconduct at trial. Given that we hold the issue on sanctions to be dispositive, we do not address the remaining issues.

**Whether the trial judge appropriately sanctioned McLain.**

¶7. The instant appeal is brought under the Federal Employees Liability Act (FELA). 45 U.S.C. § 56 (Rev. 2012). The Court has stated the following in regard to the applicable law for FELA cases:

> FELA creates a tort remedy for railroad workers injured on the job and serves as the exclusive remedy for a railroad employee injured as a result of his or her employer's negligence. What constitutes negligence for [FELA] purposes is a federal question, not varying in accordance with the differing conceptions of negligence applicable under state or local laws for other purposes. Federal decisional law formulating and applying the concept governs. Accordingly, this Court is bound to enforce the federal law as Congress has provided and as the federal courts have read it. However, *FELA cases adjudicated in state courts are subject to state procedural rules*.

*Illinois Cent. R. Co. v. Brent*, 133 So. 3d 760, 766-67 (Miss. 2013) (internal citations omitted) (internal quotations omitted) (emphasis added); *see also* *St. Louis Sw. Ry. Co. v. Dickerson*, 470 U.S. 409, 411 (1985) ("FELA cases adjudicated in state courts are subject to state procedural rules, but the substantive law governing them is federal."). Whether a party was appropriately sanctioned constitutes a procedural matter; thus Mississippi law applies. *Allen v. Nat'l R.R. Passenger Corp.*, 934 So. 2d 1006, 1014 (¶ 22) (Miss. 2006).

### A. Whether Illinois Central is procedurally barred from appealing the sanctions imposed.

6

¶8. McLain argues that Illinois Central is procedurally barred from claiming on appeal that the trial judge did not impose the appropriate sanctions because Illinois Central failed to object at trial to the sanctions at trial. McLain cites *Rubenstein v. State*, 941 So. 2d 735, 751 (Miss. 2006), and *InTown Lessee Associates, LLC v. Howard*, 67 So. 3d 711, 718 (Miss. 2011), arguing that a failure of a party to make a contemporaneous objection waives an argument on appeal. Illinois Central counters that the issue is not evidentiary, as in *Rubenstein* and *Howard*; ergo, the rules set forth by *Rubenstein* and *Howard* do not apply.

¶9. We agree with Illinois Central. The rule McLain cites addresses the need for evidentiary objections to preserve an argument for appeal. While we do not discredit the rule cited by McLain, it does not apply to the instant facts because the issue is not an evidentiary one. The correct question is whether the issue was presented to the trial judge, not whether it was objected to contemporaneously. *Purvis v. Barnes*, 791 So. 2d 199, 202 (Miss. 2001) ("The law is well settled in Mississippi that appellate courts will not put trial courts in error for issues not first presented to the trial court for resolution, and that issues not presented in the trial court cannot be first argued on appeal." ).

¶10. In the instant case, sanctioning was the last issue addressed by the trial judge, as it was reserved for after the verdict was returned. After sanctioning McLain, the trial judge asked if there was anything further. Illinois Central responded in the negative, and the trial ended. Following trial, before appealing, Illinois Central moved to dismiss and for additional sanctions, stating that the sanctions were insufficient. When it was denied, Illinois Central entered a second motion. After the second motion was denied, Illinois Central appealed. We

hold that the sanctions issue was presented to the trial judge prior to appeal.  Thus, it is not waived.

### B. Whether the sanctions imposed by the trial judge amount to an abuse of discretion.

¶11.    Illinois Central argues the sanctions were insufficient to punish McLain's conduct. Illinois Central also argues that the sanctions wholly fail to consider that McLain, himself, committed  perjury in his deposition and at trial.

¶12.    In Mississippi, our Court employs an abuse of discretion standard in reviewing the trial judge's grant or denial of sanctions. *Allen*, 934 So. 2d at 1008 ("The decision to impose sanctions for discovery abuse is vested in the trial court's discretion. The provisions for imposing sanctions are designed to give the court great latitude.").  "We will affirm a trial court's decision unless we have a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors." *Jones v. Jones*, 995 So. 2d 706, 711 (Miss. 2008).

¶13.    Under the abuse of discretion standard of review, the Court first must consider whether the lower court applied the correct legal standard. *Pierce v. Heritage Props., Inc.*, 688 So. 2d 1385, 1388 (Miss. 1997) (citing *Burkett v. Burkett*, 537 So. 2d 443, 446 (Miss. 1989)).  If the lower court applied the correct standard, then the Court "considers whether the decision was one of several reasonable ones which could have been made." *Pierce*, 688 So. 2d at 1388. "Only where a trial judge in determining a matter committed to his sound discretion makes his decision by reference to an erroneous view of the law, does this Court

8

have authority to take appropriate corrective action on appeal." ***Ashmore v. Miss. Auth. on Educ. Television***, 148 So. 3d 977, 983 (Miss. 2014) (internal quotation omitted).

¶14.    When the juror contact was first brought to the trial judge's attention, she cited ***Illinois Central Railroad Co. v. Hawkins***, 830 So. 2d 1162 (Miss. 2002), and ***Atwood v. Lever***, 274 So. 2d 146, 147 (Miss. 1973), for the rule that it was within her discretion to dismiss the juror.  After the jury verdict was returned, she then imposed a $500 sanction on McLain for the juror contact.  Given her reliance on applicable case law in dismissing the juror and then subsequently imposing a monetary sanction, without consideration of the remaining violations, we cannot hold her actions to be an abuse of discretion.

¶15.    Turning to McLain's solicitation, the trial judge failed to consider the direct link between McLain's solicitation and his own perjury.  The Court has adopted and applied four factors to determine whether a trial judge erred in dismissing a suit:

> First, dismissal is authorized only when the failure to comply with the court's order results from wilfulness or bad faith, and not from the inability to comply. Dismissal is proper only in situation[s] where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. Another consideration is whether the other party's preparation for trial was substantially prejudiced. Finally, dismissal may be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client, or when a party's simple negligence is grounded in confusion or sincere misunderstanding of the court's orders.

***Pierce***, 688 So. 2d at 1389.  While the Court has applied the ***Pierce*** factors retrospectively only to determine whether the trial judge committed clear error in dismissing the suit, we hold that, under the instant facts, the factors should be applied to determine whether the trial judge abused her discretion in *not* dismissing the case.

9

¶16. *Pierce* states that dismissal is authorized only when the failure to comply with the court's order results from willfulness or bad faith. *Id.* at 1389. McLain solicited Coker to commit perjury because he had lied in his deposition about the heaviest item he lifted at Right of Way Consultants. McLain then committed perjury on the stand, stating the heaviest thing he lifted was a flag, and he denied asking Coker to commit perjury until he became aware that Illinois Central knew he had spoken with Coker. *See Pierce*, 688 So. 2d at 1390 ("Pierce only admitted that she had been untruthful in her responses to discovery when she realized that defense knew the truth and confronted her with it."). We hold that the above facts constitute clear willfulness and bad faith on McLain's part.

¶17. Second, the *Pierce* Court considered whether less drastic sanctions would achieve the deterrence. *Id.* at 1389; *see also Jones*, 995 So. 2d at 712 ("When faced with such egregious misconduct, courts are obligated to consider sanctions that are severe enough to deter others from pursuing similar courses of action."). During sanctioning, the trial judge stated:

> I've been on the bench for 13 years in both criminal and civil cases. Not even in a criminal case where someone's liberty is at stake has this Court ever had a witness attempt to have another witness – have a plaintiff or a party to have a witness lie and then come into Court and put that testimony before a jury.

She then sanctioned McLain $10,000 for solicitation, which comes out to be less than seven percent of the final jury verdict. Given the nondrastic nature of McLain's sanction and that she failed to consider his perjury, we must determine, as the *Jones* Court opined, whether the sanction imposed is "severe *enough* to deter others." *Jones*, 995 So. 2d at 712 (emphasis added).

10

¶18.   The Legislature has carved out a criminal penalty[2] for solicitation of perjury when consideration is involved; however, our case law and statutory law do not provide much guidance on sanctioning a party for solicitation of perjury when consideration is not involved. Federal courts have relied heavily on the following observation:

> It is difficult to contemplate a clearer or more abhorrent example of a litigant's attempt to abuse and subvert the integrity of the judicial process than an effort to suborn perjury from a material witness. Coercing or seeking to obtain or manufacture false testimony [ ] strikes at the heart of the judicial system. Lying cannot be condoned in any formal proceeding. . . . Our legal system is dependent on the willingness of the litigants to allow an honest and true airing of the real facts.

*Johnese v. Jani King, Inc.*, 2008 WL 631237, at *2 (N.D. Tex. Mar. 3, 2008) (citing *Young v. Office of the U.S. Senate Sergeant At Arms*, 217 F.R.D. 61, 71 (D.D.C. 2003)).

¶19.   In the instant case, Coker was a material witness. Coker testified for Illinois Central. Between Coker's employment at Illinois Central and Right of Way Consultants, he had worked with McLain for thirty years. He testified to Illinois Central's safety programs and rules, and he testified to his and McLain's job duties at Illinois Central and at Right of Way Consultants. Coker's testimony addressed McLain's negligence claims against Illinois Central. The severity of solicitation of a material witness – even without considering

---

[2] Mississippi Code Section 97-9-65 states that a conviction for bribing a witness to commit perjury shall be punishable by up to five years imprisonment. Miss. Code Ann. § 97-9-65 (Rev. 2014). However, to be guilty under Section 97-9-65, one must "offer any valuable consideration." *Id.* In the case *sub judice*, the record clearly shows that McLain only asked Coker to commit perjury on the stand. McLain did not offer any valuable consideration in exchange for Coker's testimony.

McLain's other misconduct – warrants a sanction that amounts to more than seven percent of the verdict.[3]

¶20. The trial judge neither made a finding of McLain's own perjury nor imposed sanctions for it. Generally, we would remand for the trial judge to determine whether McLain committed perjury; however, under the instant facts, remand is not necessary because the record clearly establishes perjury. During his depositions and at trial, McLain stated that the heaviest thing he lifted was a flag. When pressed by Illinois Central, McLain admitted that he had asked Coker not to mention that he actually had lifted a forty-pound derail. It is clear from the record that McLain solicited perjury in order to conceal his own perjury. In other words, McLain's perjury is directly tied to his solicitation – a court cannot find one without finding the other. Thus, the trial judge's failure to sanction McLain is completely at odds with the importance of deterring others from committing perjury.

¶21. Third, the **Pierce** Court considered whether the other party was substantially prejudiced in the discovery process, but the Court also wrote that substantial prejudice is not required for dismissal to be the appropriate remedy. **Pierce**, 688 So. 2d at 1391. The Court has held that substantial prejudice occurs when the "discovery violations impose on the opposing party major inconvenience in time, attorney fees [sic] and general frustration." **Ashmore**, 148 So. 3d at 984 (quoting **Scoggins v. Ellzey Beverages, Inc.**, 743 So. 2d 990, 997 (Miss. 1999)) (internal quotation marks omitted). McLain committed perjury during

---

[3] Under different facts, where the solicitation is not accompanied by multiple other acts of misconduct, we hold no opinion on what constitutes an appropriate heavier sanction. We only hold that, where the trial judge failed to cite any law for her decision, a monetary sanction of less than seven percent of a verdict is not sufficient for solicitation of perjury.

discovery and at trial, and in order to ensure his "story" remained consistent, he solicited Coker to commit perjury. McLain's willful and numerous violations caused substantial prejudice for Illinois Central in uncovering them and arguing them before the trial court and our Court.

¶22.    Fourth, the *Pierce* Court addressed whether the neglect is attributable to an attorney or a client. *Pierce*, 688 So. 2d at 1389. McLain alone sought out Coker and committed perjury under oath on two occasions. Thus, the egregious conduct is attributable directly to McLain.

¶23.    In *Jones*, during the trial, it became clear that one party had committed perjury on the stand. *Jones*, 995 So. 2d at 712. The chancellor recognized that perjury had occurred but failed to impose sanctions. *Id.* On appeal, we stated that "misconduct must not go unpunished" and held that the chancellor had abused his discretion in not imposing sanctions. *Id.* (internal quotation marks omitted). The Court remanded for the chancellor to consider imposing further sanctions and/or to refer the party to the district attorney for criminal prosecution. *Id.*

¶24.    *Jones* gives us further guidance in concluding, based on the *Pierce* factors, that the trial judge committed clear error for not imposing sanctions for McLain's perjury. However, in *Jones*, the Court remanded for the chancellor to determine the appropriate sanctions. While we agree that the *Jones* Court was correct in remanding, as remand is generally the appropriate remedy, under the instant facts, remand is not warranted.

¶25. Unlike in *Jones*, McLain committed misconduct at *least* four times during discovery and at trial. He committed perjury during discovery and at trial. He solicited Coker to commit perjury, and although he was sanctioned, his sanction was an abuse of discretion as it constituted less than seven percent of the verdict. Lastly, he also engaged in inappropriate contact with a juror. Each act of misconduct, taken separately, may not warrant dismissal. However, given that the record before us clearly establishes all of McLain's misconduct and that his misconduct includes perjury and solicitation of perjury – which strike to the heart of our judicial system and require sanctions to deter others – we hold that the trial judge abused her discretion in imposing only monetary sanctions on McLain. We further hold that, along with the monetary sanctions, the only appropriate remedy is ro reverse McLain's judgment against Illinois Central and dismiss the case.

**Conclusion**

¶26. Generally, when we determine a trial judge committed clear error in her imposition of sanctions, we will remand for the trial judge to reconsider the facts and apply appropriate sanctions. However, under the special circumstances of the instant case, in which McLain committed numerous egregious acts, dismissal is the only appropriate remedy. We uphold the trial judge's imposition of the $500 sanction for improper juror contact and the $10,000 sanction for solicitation of perjury. Further, given that a monetary fine alone is not enough in the instant case for the solicitation of perjury and committing perjury, we reverse the judgment against Illinois Central, and we render judgment here in favor of Illinois Central

14

that McLain takes nothing and that his complaint and this case are finally dismissed with prejudice and with court costs assessed against McLain.

¶27.  **AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.**

**DICKINSON AND RANDOLPH, P.JJ., LAMAR AND PIERCE, JJ., CONCUR. WALLER, C.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER, J. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, J.**

**KING, JUSTICE, DISSENTING:**

¶28.  Because a trial court's order imposing sanctions is reviewed for abuse of discretion, and because dismissal of an action is reserved for the most extreme circumstances, I believe that the trial judge did not abuse her discretion in issuing monetary sanctions. Further, I believe that the majority's holding to dismiss McLain's case without remanding to the trial court for reconsideration of greater sanctions would require this Court to adopt a per se rule of dismissal in cases involving perjury.[4] Accordingly, I dissent.

¶29.  This Court will affirm a trial court's imposition of sanctions unless there is a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors." ***Pierce v. Heritage Props., Inc.***, 688 So. 2d 1385, 1388 (Miss. 1997). It is the Court's duty to decide whether the district court

---

[4]In fact, a per se rule of dismissal in cases involving perjury would have a profound effect on the judicial system. As Professor Alan M. Dershowitz stated while testifying before the House of Representatives Judiciary Committee, "[I] believe that no felony is committed more frequently in this country than the genre of perjury and false statements. Perjury during civil depositions and trials is so endemic that a respected appellate judge once observed that 'experienced lawyers say that, in large cities, scarcely a trial occurs in which some witness does not lie.'" Testimony of Alan M. Dershowitz, House of Representatives Judiciary Committee (Dec. 1, 1998).

abused its discretion in dismissing the action, not whether it would have dismissed the action as an original matter. *Id.* (citing *National Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642, 96 S. Ct. 2778, 2780-81, 49 L. Ed. 2d 747 (1976). Dismissal of an action should be rare and only when a party's conduct is so egregious that no other sanction will meet the demands of justice. *Wood ex rel. Wood v. Biloxi Pub. Sch. Dist.*, 757 So. 2d 190, 195 (Miss. 2000).

¶30.     "If the trial court applies the 'correct legal standard,' we must affirm the decision, regardless of what any one of us individually might have ruled had we been the judge, unless there is a 'definite and firm conviction that the court below committed clear error.'" *Ashmore v. Mississippi Auth. on Educ. Television*, 148 So. 2d 977, 982 (Miss. 2014) (citations omitted). "Sound discretion imports a decision by reference to legally valid standards." *Id.* at 983. In *Ashmore*, the majority held that the trial judge unquestionably used the correct standard of review because he merely referred, without analysis, to *Pierce* and *Scoggins*. Yet today, this same majority gives no deference to the trial court's decision despite her use of the correct legal standard and her clear grasp of the situation at hand. While the trial judge may not have recited the magic words, her analysis in this case is no more or less lacking than that of the trial judge in *Ashmore*, and is deserving of no less and no more respect than this Court accorded to the trial judge in *Ashmore*. When imposing sanctions, the trial court stated, "[t]he Court opines that sanctions in the amount of ten thousand dollars ($10,000) is appropriate and reasonable. The Court is duty bound to impose such deterrent sanctions . . . ." The trial judge additionally stated that she was appalled, and

16

that every member of the bar should be appalled as well. The trial judge then repeatedly stated that the legal system was "better than that," and that the court "should send a message to everyone in Hinds County, in this state and nation that [the trial judge] would not tolerate it." After thoroughly discussing the severity of the plaintiff's conduct, the trial judge sanctioned the plaintiff in the amount of $10,000. "The provisions for imposing sanctions are designed to give [trial] court[s] great latitude." *Jones v. Jones*, 995 So. 2d 706, 711(Miss. 2008) (quoting *Amiker v. Drugs for Less, Inc.*, 796 So. 2d 942, 948 (Miss. 2000)). Thus, the record in this case clearly shows that the trial court considered the seriousness of the plaintiff's conduct and determined that a monetary sanction would sufficiently deter similar behavior.

¶31.   The majority states that the trial judge failed to consider that McLain committed perjury himself. I believe the record reflects that the trial judge was fully aware of McLain's perjury. As the majority states, "a court cannot find one without finding the other." Illinois Central did not to object to the trial court's order until two weeks after the imposition of sanctions.  Further, had the trial judge merely failed to consider McLain's perjury, her oversight easily could have been corrected in the two additional motions Illinois Central brought after the imposition of sanctions, arguing this exact claim. McLain stated in his deposition and trial testimony that the heaviest thing he was required to lift at Right of Way was a flag. McLain also asked Coker to refrain from mentioning that he lifted derails at Right of Way Consulting. McLain's solicitation of Coker and his perjury were attempts to cover up the fact that McLain lifted derails after his employment at Illinois Central.  McLain

17

readily admitted in front of the jury that he had attempted to influence Coker and that he was required to lift something heavier than a flag after he left Illinois Central. Because these acts were intertwined and inseparable, the $10,000 sanction imposed on McLain encompassed both McLain's perjury and his solicitation of Coker.

¶32.    Dismissal is appropriate only when no lesser sanctions will suffice. This Court, in *Pierce*, emphasized its reluctance to dismiss a cause of action and, consequently, to deprive a plaintiff of her day in court. *Pierce*, 688 So. 2d 1385. "[T]he trial court should dismiss a cause of action for failure to comply with discovery only under the most extreme circumstances." *Id.* at 1388 (citations omitted). "We hasten to reiterate our reluctance to uphold the sanction of dismissal (the "death penalty")." *Id.* at 1391.

¶33.    *Pierce* gave us four factors to consider when analyzing whether dismissal was appropriate. Admittedly, the first factor in *Pierce* leans towards dismissal, in that McLain's conduct resulted from willfulness and bad faith. Under the second factor, however, dismissal is proper only when less drastic sanctions will not suffice. In reasoning that the imposed monetary sanctions were insufficient, the majority states that the sanctions totaled less than seven percent of the overall verdict; however, monetary sanctions should not be based on the amount of the jury verdict. If sanctions were based on the amount of the jury verdict, seven percent of a $1,000,000 verdict would merit a $70,000 sanction. This would be a considerable sanction to any reasonable mind.  The trial judge ordered McLain to pay the $10,500 sanctions personally, without payment, advance, or loan from his attorneys or others.

18

Thus, monetary sanctions in this amount to be paid personally and without help certainly would deter others from similar conduct and uphold the integrity of judicial proceedings.

¶34.    Factor three in *Pierce* looks at whether the defendant suffered substantial prejudice as a result of the discovery violation. Coker promptly disclosed to Illinois Central that McLain had requested he stay silent about the derails. Illinois Central was able to ask McLain about his perjury and solicitation in front of the jury. Substantial prejudice is not required for dismissal, but this third factor again does not favor dismissal of the action. Lastly, the neglect here was attributable to McLain and not his attorney. Thus, analysis of the *Pierce* factors does not lead to the conclusion that dismissal was so overwhelmingly warranted that we must hold that the trial judge abused her discretion and must dismiss the action ourselves.

¶35.    As this Court has stated before, "[d]ismissal for discovery violations is a "draconian" remedy or a "remedy of last resort," only to be applied in extreme circumstances." *White v. White*, 509 So. 2d 205, 209 (Miss. 1987). The trial court's duty is to "impose the least severe sanction available that will accomplish the purpose for which the sanction is imposed." *Scoggins v. Ellzey Beverages, Inc.*, 743 So. 2d 990, 993 (Miss. 1999). The plaintiff in *Pierce* repeatedly lied throughout discovery, including in interrogatories and depositions, and through an entire trial, successfully concealing the fact that she was not alone in her apartment the night that her ceiling fan fell and caused her injuries. Two weeks after the trial, the defendants first learned of her *numerous* perjuries. Yet, this Court did not impose additional monetary sanctions for her litany of lies and simply affirmed the trial court's

19

dismissal of her cause of action. Likewise, in **Jones**, the plaintiff attempted to conceal an extramarital affair and admittedly destroyed relevant evidence to further that goal. This Court was not so aggrieved at her conduct that it ordered monetary sanctions and the dismissal of her case. Instead, this Court found that the trial judge wholly failed to consider sanctions and remanded the issue for reconsideration. Even in **Ashmore**, where this Court held that the plaintiffs' "pattern of 'willful misrepresentations' spanned more than two years, causing the Mississippi Defendants 'major inconvenience in time, attorney fees and general frustration,'" this Court did not impose monetary sanctions in addition to dismissal.

¶36.   For McLain's failed attempt to cover up the fact that he lifted derails at Right of Way, the majority holds that he should be sanctioned $10,000, to be paid without help, and that his case additionally should be dismissed. The majority's holding would effectively strip away McLain's judgment in his favor and leave McLain with no compensation for his back injury, which the jury found was caused by McLain's thirty-two-year employment at Illinois Central, plus add a sizeable $10,500 sanction to be paid personally, without help.[5] McLain will also be required to pay the cost of the trial, as well as the cost of the appeal. This dramatic result fits the quintessential definition of draconian. While this Court, sitting in the position of the trial judge, might have dismissed the original action due to McLain's conduct, this is not the

---

[5]In addition, McLain was thoroughly cross-examined about his perjury and solicitation of Coker, and the jury presumably took this into consideration in rendering the verdict. McLain's attorney asked the jury to compensate McLain in the amount of $250,000 to $300,000 and the jury instead found in the amount of $150,000.

correct standard to employ.[6] I believe that lesser sanctions than dismissal accomplished the purpose for which the sanctions were imposed, and that the trial judge did not abuse her discretion in finding that monetary sanctions sufficiently punished McLain and deterred others from like conduct.

¶37. Moreover, should this Court find that the sanctions issued by the trial court were insufficient, I believe the correct procedure is to remand to the trial court to consider the imposition of greater sanctions. As the majority states, when we determine a trial judge committed error in imposing sanctions, we generally remand to the trial judge to reconsider. The Court of Appeals correctly stated that "[w]e recognize the chancellor possesses sole discretion as to whether sanctions should be imposed for discovery violations, and we employ an abuse-of-discretion standard of review when considering a chancellor's order of sanctions." *Williamson v. Williamson*, 81 So. 3d 262, 276 (Miss. Ct. App. 2012). This Court does not routinely dismiss actions after determining the trial court abused its discretion in

---

[6]The correct standard is instead abuse of discretion. *See Schmidt v. Bermudez*, 5 So. 3d 1064, 1065 (Miss. 2009) ("As appellate judges, we perform our duties far from the smoke and fire of the courtroom battles faced daily by trial judges. Thus, we owe substantial discretion to their decisions, particularly when they encounter difficult attorneys and witnesses."); *Mississippi Farm Bureau Mut. Ins. Co. v. Parker*, 921 So. 2d 260, 265 (Miss. 2005) ("Our trial judges are likewise in a much better position to decide which parties and/or lawyers need to be sanctioned for their behavior, and our trial judges should unhesitatingly exercise this inherent power and authority."); *James W. Sessums Timber Co. v. McDaniel*, 635 So. 2d 875, 882 (Miss. 1994) ("While an attorney making a closing argument may not make remarks which are unfairly calculated to arouse passion or prejudice, and while we do not condone appeals to sectional prejudices of the jury, the control of such argument is left largely to the discretion of the trial judge, who is in a much better position to observe and determine what is improper."); *Ladner v. Ladner*, 436 So. 2d 1366, 1371 (Miss. 1983) ("[S]anctions are not to be imposed per se for every discovery violation, and a determination of whether to impose such a sanction is ordinarily vested in the sound discretion of the trial judge.").

issuing lesser sanctions. To stray from this trend would require this Court to adopt a per se rule of dismissal in cases involving perjury.

¶38. The *Pierce* majority stated that "such action by any party should not and will not be tolerated." *Pierce*, 688 So. 2d at 1392. McLain's actions also should not and will not be tolerated. And McLain's actions clearly were not tolerated by the trial judge's imposition of severe monetary sanctions. But dismissal along with these sanctions goes beyond intolerance and skirts the line of injustice.

¶39. This Court's role in looking at the trial court's imposition of sanctions is to "consider whether the decision was one of several reasonable ones which could have been made." *Ashmore*, 148 So. 3d at 985. I cannot hold that it was an abuse of discretion to issue monetary sanctions and, additionally, cannot agree to dismiss this case instead of remanding to the trial court for reconsideration. Should this Court decide that the monetary sanctions imposed were insufficient, I believe the appropriate remedy is to remand to the trial court for reconsideration of greater sanctions. The majority concludes its decision by alleging "special circumstances" in this case. It alleges those "special circumstances" to be "numerous egregious acts" committed by McLain. The record before this Court does not support the majority's allegation of "numerous egregious acts." What the record reflects is that McLain, contrary to the trial court's order, exchanged pleasantries with a juror, for which the trial court fined him $500. The record reflects that McLain committed perjury himself and asked a witness to commit perjury in support of McLain's perjury. While this is highly inappropriate conduct, it does not qualify for the label "numerous." This Court should not

subvert the trial court's discretion by dismissing the case for perjury based on its own findings. Therefore, I dissent and would affirm the trial court's decision to impose monetary sanctions.

**KITCHENS, J., JOINS THIS OPINION**.

**WALLER, CHIEF JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶40.    I agree with the majority opinion with the exception of the disposition. Significant to my opinion, I agree that a sanction of $10,000, in light of the $150,000 jury verdict, was inadequate to have any deterrent effect on similar future behavior, and therefore constituted an abuse of discretion. *See Jones v. Jones*, 995 So. 2d 706, 712 (Miss. 2008). I also agree the trial court judge abused her discretion by failing to award sanctions for McLain's perjury. *Id.* (providing perjury "must not go unpunished").

¶41.    I would find, however, that under these circumstance, these issues should be remanded to the trial court for a determination of an appropriate sanction, including dismissal. This Court has repeatedly held that sanctions are squarely within the discretion of the trial judge, and that the trial judge should be afforded great latitude. *See, e.g., Ashmore v. Miss. Auth. on Educ. Television*, 148 So. 3d 977, 981 (Miss. 2014), (citing *Pierce v. Heritage Props., Inc.*, 688 So. 2d 1385, 1388 (Miss. 1997)). Moreover, dismissal is appropriate only where no lesser sanction would suffice. *Pierce*, 688 So. 2d at 1389-90. Because I find that a less drastic sanction potentially may suffice to deter similar future behavior, I would remand this case to the trial court to make such a determination, and to impose appropriate sanctions, including dismissal if the trial court judge determined it was the only sufficient sanction.

23

**CHANDLER, J., JOINS THIS OPINION.**